## DANIEL J. KELLY *v.* AMERICO FIGUEIREDO ET AL. (14433)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued June 5—decision released July 21, 1992

 

*Joseph T. Sweeney,* with whom was *James M. Sconzo,* for the appellants (defendants-third party plaintiffs).

*Richard C. Robinson,* with whom was *Jeffery P. Apuzzo,* for the appellee (third party defendant).

PETERS, C. J. The principal issue in this appeal is whether an exclusion clause in a liquor seller liability insurance policy is sufficiently ambiguous so that it should be read to provide coverage for damages caused by an assault and battery by an intoxicated patron. The defendants, Americo Figueiredo, permittee of the Madison Cafe in Hartford, and its backer, Tomar, Inc., (the insured) sought to implead the Calvert Insurance Company (Calvert) as a third party defendant in a civil action brought against the insured by the plaintiff, Daniel J. Kelly. Calvert filed a motion to strike the third party complaint, which was granted by the trial court, *Stengel, J.* The trial court, *M. Hennessey, J.,* subsequently rendered judgment in favor of Calvert on the third party complaint. The insured appealed to the Appellate Court, and we transferred the matter to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm.

In reviewing the trial court's judgment following the granting of Calvert's motion to strike, we "must take the facts to be those alleged in the [third party] plaintiff's complaint and construe the complaint in the manner most favorable to sustaining its legal sufficiency." *Michaud* v. *Wawruck,* 209 Conn. 407, 408, 551 A.2d 738 (1988); *Blancato* v. *Feldspar Corporation,* 203 Conn. 34, 36, 522 A.2d 1235 (1987). Accordingly, we assume the following facts as alleged in the insured's

third party complaint. In January, 1990, Calvert issued to the insured a liquor seller liability insurance policy, effective from January 5, 1990, to January 5, 1991. Under the policy, Calvert agreed to pay damages and to provide the services of defense counsel if the insured were charged with liability under the Connecticut Liquor Control Act, General Statutes §§ 30-1 through 30-113, for injuries sustained by any person as a result of the alleged selling or giving of any alcoholic beverage at the Madison Cafe. The policy included the following exclusionary endorsement: "ASSAULT AND BATTERY EXCLUSION: It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person."

On January 14, 1991, Daniel J. Kelly filed a substitute complaint against the insured, pursuant to the Connecticut Dram Shop Act, General Statutes § 30-102.[1] Kelly alleged that he had sustained injuries on May 22, 1990, when he was struck and stabbed by a Madison Cafe patron to whom the insured had sold

---

[1] "[General Statutes] Sec. 30-102. DRAM SHOP ACT; LIQUOR SELLER LIABLE FOR DAMAGE BY INTOXICATED PERSON. If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty-day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the

alcohol while that patron was intoxicated.[2] The complaint did not allege that the patron who had struck Kelly was attempting to prevent or suppress an assault and battery.

On June 13, 1991, the insured filed a revised third party complaint against Calvert, seeking to force Calvert to defend the insured against Kelly's claim and to indemnify it in case of any liability. Thereafter, Calvert successfully moved to strike the third party complaint on the ground that the policy's assault and battery exclusion relieved Calvert of any obligation to defend or indemnify the insured in the circumstances of this case.

The insured appealed from the ensuing judgment in favor of Calvert, raising the following three claims: (1) the exclusion clause in Calvert's liquor seller liability insurance policy, properly construed, does not exclude coverage for the assault and battery alleged by Kelly; (2) the exclusion clause should be construed in favor of coverage because the clause is ambiguous; and (3) public policy considerations require a construction of the exclusion clause to permit coverage for Kelly's claim.

I

The insured maintains first that the assault and battery exclusion clause by its own terms "plainly and

time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

[2] In a second count, Kelly claimed that the insured caused his injuries by its negligence in supervising its employees, failing to warn customers of the risks of patronizing the Madison Cafe, allowing violent persons on the premises, failing to control patrons, and allowing intoxicated persons to remain on the premises even when those persons became dangerous. This second claim does not arise under the Liquor Control Act, and, therefore, the insurance policy at issue does not apply to it.

clearly" imposes liability on Calvert for the dram shop claim raised by Kelly. Specifically, the insured asserts that the clause at issue excludes coverage not for generic assaults and batteries, but only for assaults and batteries taking place "in connection with the prevention or suppression of" other assaults and batteries. Calvert argues, on the other hand, that the exclusion clause applies to all assaults and batteries. We agree with Calvert's interpretation of the exclusion clause.

Deciding the scope of the exclusion clause "involves a determination of what coverage the insured expected to receive and what coverage the insurer expected to provide as disclosed by the language of the policy." *Aetna Life & Casualty Co.* v. *Bulaong,* 218 Conn. 51, 60, 588 A.2d 138 (1991); *Hammer* v. *Lumberman's Mutual Casualty Co.,* 214 Conn. 573, 583, 573 A.2d 699 (1990); *Marcolini* v. *Allstate Ins. Co.,* 160 Conn. 280, 283, 278 A.2d 796 (1971). The words of the policy must be accorded their natural and ordinary meaning. *Hammer* v. *Lumberman's Mutual Casualty Co.,* supra. "[C]ourts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." (Internal quotation marks omitted.) Id.

The exclusion clause provides in relevant part: "[T]he insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts . . . ." The insured maintains that the prepositional phrase, "in connection with the prevention or suppression of such acts," modifies both "assault and battery" and "any act or omission." It argues, therefore, that assaults and batteries are excluded from coverage only when committed in the prevention or suppression of other assaults and batteries.

The repetition of the words "out of" before "assault and battery" and before "any act or omission" forecloses the insured's construction of the clause. If we were to adopt that interpretation, the second use of "out of" would be rendered superfluous. "If it is reasonably possible to do so, every provision of an insurance policy must be given operative effect." *Streitweiser* v. *Middlesex Mutual Assurance Co.,* 219 Conn. 371, 376, 593 A.2d 498 (1991); *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.,* 153 Conn. 618, 621-22, 220 A.2d 32 (1966). The policy therefore does not "plainly and clearly" provide coverage to the insured on Kelly's assault and battery claim. Cf. *Gregory* v. *Western World Ins. Co.,* 481 So. 2d 878, 881 (Ala. 1985) (construing an identical exclusion clause and stating that the clause applies to assaults and batteries); *Thornton* v. *Illinois Founders Ins. Co.,* 84 Ill. 2d 365, 371, 418 N.E.2d 744 (1981) (construing an identical exclusion clause and stating that "[i]t is clear that, under the policy, acts constituting battery are excluded" from coverage). On its face, the exclusion clause does not cover Kelly's claim against the insured.

## II

The insured next claims, in the alternative, that even if the policy does not clearly include coverage for assaults and batteries, the exclusion clause is at least ambiguous and therefore must be construed against Calvert, the drafter of the policy. The insured asserts that the exclusion clause's ambiguity is apparent because the parties contend for different interpretations of its language. We hold, however, that the exclusion clause unambiguously relieves Calvert of any obligation to defend or indemnify the insured in connection with Kelly's dram shop claim.

Under well established principles of contract construction, we must "construe the terms of an insurance

policy in favor of insurance coverage because it is the insurance company that has drafted the terms of the policy." *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 375; see also *Beach* v. *Middlesex Mutual Assurance Co.,* 205 Conn. 246, 250, 532 A.2d 1297 (1987); *LaBonte* v. *Federal Mutual Ins. Co.,* 159 Conn. 252, 256, 268 A.2d 663 (1970). "A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous." *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 375. The fact that the parties advocate different meanings of the exclusion clause "does not necessitate a conclusion that the language is ambiguous." *Aetna Life & Casualty Co.* v. *Bulaong,* supra, 60; *Marcolini* v. *Allstate Ins. Co.,* supra, 284; compare *Beach* v. *Middlesex Mutual Assurance Co.,* supra, 251 (finding ambiguity in an insurance policy where two plausible alternate readings were equally reasonable).

The exclusion clause is not ambiguous. The words at issue do not have multiple definitions. See *Beach* v. *Middlesex Mutual Assurance Co.,* supra, 251 (finding the word "collapse" ambiguous as used in an insurance policy because it may mean "a catastrophic breakdown" or "a breakdown or loss of structural strength"). We can say with a high degree of certainty that the exclusion clause was intended to exclude all assaults and batteries from coverage. See *Griswold* v. *Union Labor Life Ins. Co.,* 186 Conn. 507, 514, 442 A.2d 920 (1982) (finding ambiguity where "we cannot say with any degree of certainty [what the clause] was intended to exclude"). The exclusion clause therefore unambiguously relieves Calvert of any obligation to defend or indemnify the insured in this case.

### III

Finally, the insured claims that the exclusion clause should not be read to exclude assaults and batteries

from coverage because of "the public policy goal of assuring that the innocent victims of injuries caused by intoxicated persons be able to recover compensation for those injuries." We disagree.

The legislature enacted § 30-102, the Dram Shop Act, in 1933, thereby creating a cause of action against liquor sellers for victims injured by intoxicated persons to whom the liquor sellers have served alcohol. The common law did not allow such a cause of action because the intoxicated person's consumption of alcohol was held to constitute a break in the causal chain between the liquor seller and the victim. *Ely* v. *Murphy,* 207 Conn. 88, 92–93, 540 A.2d 54 (1988); *Kowal* v. *Hofher,* 181 Conn. 355, 357–58, 436 A.2d 1 (1980). In enacting § 30-102 and abrogating the common law bar to a cause of action, the legislature thus allowed some measure of recovery to victims of acts of intoxicated persons. *Kowal* v. *Hofher,* supra, 358. The legislature, however, did not require liquor sellers to maintain any level of insurance coverage for potential dram shop liability.

To discern the public policy underlying the Dram Shop Act, it is useful to compare the legislature's enactment of § 30-102 with its actions regarding motor vehicle liability insurance. General Statutes § 14-12b[3]

---

[3] General Statutes § 14-12b provides in pertinent part: "MOTOR VEHICLE REGISTRATION NOT TO BE ISSUED WITHOUT PRESENTATION OF NO-FAULT IDENTIFICATION CARD OR POLICY. . . . (a) No motor vehicle registration shall be issued by the commissioner for any private passenger motor vehicle, as defined in subsection (g) of section 38a-363, unless (1) the application for registration is accompanied by a current no-fault automobile insurance identification card or a copy of a current insurance policy or endorsement issued by a company licensed to issue such insurance in this state, an approved self-insurer or issued pursuant to the plan established under section 38a-329, verifying that the applicant has the required security coverage and (2) the applicant signs and files with the commissioner, under penalty of false statement as provided for in section 53a-157, a statement on a form approved by the commissioner that the owner of the vehicle has provided and will continuously maintain throughout the registration

requires that all motor vehicles registered in Connecticut carry automobile liability insurance. Additionally, General Statutes § 38a-336[4] requires all such policies to include uninsured motorist coverage, which ensures the protection of insured motorists who are legally entitled to recover damages for bodily injuries from uninsured or underinsured motorists. *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 377, citing *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982); *American Universal Ins. Co.* v.

period the minimum security required by section 38a-371 for payment of basic reparations benefits and the liabilities covered under residual liability insurance required by sections 38a-19 and 38a-363 to 38a-388 inclusive."

[4] General Statutes § 38a-336 provides in pertinent part: "UNINSURED MOTORIST COVERAGE. (a) (1) Each automobile liability insurance policy shall provide insurance, herein called uninsured motorist coverage, in accordance with the regulations adopted pursuant to section 38a-334, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom. Each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but the insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of the policy issued to the named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured.

"(2) Notwithstanding any provision of this section to the contrary, each automobile liability insurance policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured."

*DelGreco,* 205 Conn. 178, 197, 530 A.2d 171 (1987). "The 'public policy' embodied in [§ 38a-336] is simply to ensure that a motorist injured by another motorist has at least $20,000 in coverage available." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 474, 370 A.2d 1011 (1976); see also *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 377.

In contrast, the Dram Shop Act evinces no intent by the legislature to ensure a minimum amount of coverage; the statute merely creates a cause of action that was unavailable at common law. Although the legislature is free to require liquor sellers to maintain liability insurance for their potential dram shop liability, just as it has required motor vehicle coverage, the legislature has not done so. We, therefore, reject the insured's suggestion that the public policy that underlies § 30-102 must override the plain meaning of the exclusion clause.

Absent any general public policy that would prohibit the operation of the assault and battery exclusion in the insured's liquor seller liability insurance policy, the insured's "public policy" claim devolves into an argument that we should read the ambiguous language of the exclusion clause narrowly in order to further the goal of protecting innocent victims from the harmful acts of intoxicated persons. Because we have decided in Part II, supra, that the language of the exclusion clause unambiguously relieves Calvert of any obligations on Kelly's claim, the insured's public policy argument must fail.[5]

The judgment is affirmed.

In this opinion the other justices concurred.

[5] The insured attempts to buttress its public policy argument with the claim that the insurance policy at issue, with the assault and battery exclusion, is a "cruel hoax" insofar as "unsophisticated liquor seller[s]" like the insured might believe that the insurance policy afforded coverage for assaults and batteries. Because the insured produced no evidence in the trial court of any infirmities in the negotiation of the insurance policy, we lack the factual predicate to consider this claim.