SPRINGDALE DONUTS, INC. *v.* AETNA CASUALTY
AND SURETY COMPANY OF
ILLINOIS ET AL.
(SC 15918)

Callahan, C. J., and Borden, Berdon, Norcott and McDonald, Js.

---

[15] See part I of this opinion.

Argued November 5, 1998—officially released March 2, 1999

*Leo Gold*, for the appellant (plaintiff).

*Peter J. Ponziani*, with whom, on the brief, were *Charles E. Vermette, Jr.*, and *Christopher L. Jefford*, for the appellees (defendants).

*Opinion*

CALLAHAN, C. J. The sole issue in this appeal is whether contracts of insurance that the plaintiff, Springdale Donuts, Inc., purchased from the defendants, Aetna Casualty and Surety Company of Illinois, Farmington Casualty Company and Aetna Casualty and Surety Company,[1] required the defendants to defend and to indemnify the plaintiff with respect to claims brought against

---

[1] We refer herein to Aetna Casualty and Surety Company of Illinois, Farmington Casualty Company and Aetna Casualty and Surety Company collectively as the defendants. All three defendants are related companies.

it by two of its employees, Helen Ritch and her daughter, Tina Ritch (claimants). We conclude that they did not.

The following facts and procedural history are undisputed. The plaintiff is the operator of a Dunkin' Donuts shop (shop) located on Hope Street in Stamford. During parts of 1992 and 1993, the plaintiff employed the claimants as cashier-clerks at the shop. In 1995, the claimants brought separate actions in federal court against the plaintiff, claiming that they had been the victims of sexual harassment and discrimination in the workplace.[2] Specifically, the claimants alleged that in the course of their employment at the shop, a fellow employee, Sherif Mohamed, had sexually assaulted them and had made frequent lewd and lascivious remarks, requests and gestures to them. Maintaining that they had suffered mental anxiety and distress, and humiliation as a result of Mohamed's conduct, the claimants sought to recover damages from the plaintiff

---

[2] The two complaints alleged virtually identical claims. Count one of Helen Ritch's complaint alleged in relevant part:

"9. Between June 1992 and October 26, 1993, Sherif Mohamed, made frequent obscene, lewd and lascivious remarks, requests and gestures to Helen Ritch, and sexually assaulted her.

"10. The nature and frequency of those remarks, requests and gestures were such to create a sexually harassing workplace.

"11. [Springdale] . . . failed to supervise Sherif Mohamed or otherwise intervene to prevent him from engaging in sexually harassing conduct when they knew or, in the exercise of reasonable care, should have known of his conduct.

"12. As a result of the sexual harassment in her workplace, the plaintiff has suffered and will in the future continue to suffer mental anxiety, distress of mind and humiliation."

Count two of Helen Ritch's complaint incorporated the allegations contained in count one and asserted that the plaintiff had been negligent in retaining Mohamed when it knew or should have known of his conduct.

Count three of Helen Ritch's complaint asserted a claim for intentional infliction of emotional distress against Mohamed. Neither party argues that the plaintiff's insurance policies provide coverage for that claim.

Tina Ritch's complaint presented claims identical to those contained in Helen Ritch's complaint. The only significant difference related to the dates of her employment.

for negligent failure to remedy sexually harassing conduct in the workplace, for sexual discrimination in violation of General Statutes § 46a-60 (a) (8), and for sexual harassment in violation of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000e et seq.

Thereafter, the plaintiff sought coverage from the defendants for the claims that had been brought against it by the claimants. The plaintiff relied on the following contracts, or policies, of insurance: (1) a workers' compensation and employer's liability policy (workers' compensation policy) issued by Farmington Casualty Company; (2) a commercial general liability policy issued by Aetna Casualty and Surety Company of Illinois; and (3) a commercial excess liability (umbrella) policy issued by Aetna Casualty and Surety Company.[3] The defendants denied coverage under the policies, and refused to defend or indemnify the plaintiff with respect to the claimants' actions. The plaintiff subsequently reached settlement agreements with the claimants.[4] Thereafter, the defendants refused to reimburse the plaintiff for expenses related to those settlements.

In March, 1996, the plaintiff instituted the present action against the defendants, seeking damages under the theories of waiver, breach of contract and violation of the covenant of good faith. The trial court determined that the policies did not provide coverage for the underlying claims and concluded, therefore, that the defendants had no duty to defend or indemnify the plaintiff with respect to the underlying claims. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this

[3] The claimants' complaints involve two policy years, 1992 and 1993. The insurance policies for each of the policy years are essentially identical and, therefore, no distinction between the policy years is necessary.

[4] In February, 1996, while the claimants' lawsuits were pending, the plaintiff settled both actions. The plaintiff settled with Helen Ritch for $13,000, and with Tina Ritch for $4500.

court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

On appeal, the plaintiff claims that the trial court improperly concluded that the defendants had no duty to defend it in the underlying actions brought by the claimants.[5] Specifically, the plaintiff argues that: (1) the workers' compensation policy provides coverage for the underlying actions, although the underlying complaints do not state claims for workers' compensation benefits; (2) the allegations contained in the underlying complaints fall within the slander and invasion of privacy provisions of the commercial general liability policy; and (3) the personal injury and bodily injury provisions of the umbrella policy provide coverage for the underlying claims. We disagree.

Before reaching the merits of the dispute between the parties, we set forth the standard of review. "It is the function of the court to construe the provisions of the contract of insurance." *Gottesman* v. *Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979). The "[i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991). "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The

---

[5] On appeal, the plaintiff pursues only its claims pertaining to the defendants' contractual duty to defend, and not its claims of violation of the covenant of good faith and waiver.

policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citations omitted; internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324–25, 714 A.2d 1230 (1998). "A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous." (Citation omitted; internal quotation marks omitted.) *Kelly* v. *Figueiredo*, 223 Conn. 31, 37, 610 A.2d 1296 (1992). "[B]ecause the proper construction of a policy of insurance presents a question of law, the trial court's interpretation of the policy is subject to de novo review on appeal." *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 483, 697 A.2d 680 (1997).

I

The plaintiff first contends that the trial court improperly concluded that, under its workers' compensation policy, the defendants had no duty to defend the plaintiff against the claimants' underlying claims.[6] Specifically, the plaintiff contends that: (1) the coverage provisions of the workers' compensation policy are ambiguous and, therefore, must be construed against the defendants; and (2) so construed, the coverage provisions of the policy encompass not only claims for workers' compensation benefits, but also actions, such as the underlying claims, that are based upon allegations possibly capable of supporting claims for workers' compensation benefits.[7] We are unpersuaded.

---

[6] We address only part one of the workers' compensation policy. The plaintiff did not pursue a claim under the employer's liability coverage (part two) in the trial court, and in its trial court brief the plaintiff stated that it "makes no claim under Part Two."

[7] The plaintiff also argues that the trial court improperly considered the defendants' claim that the workers' compensation policy covered only claims

We note at the outset that it is well settled that "an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. See, e.g., *Keithan* v. *Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138, 267 A.2d 660 (1970). The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the insurer's duty to defend is measured by the allegations of the complaint. . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend. . . . On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, [143 Conn. 510, 517, 123 A.2d 755 (1956)]." (Citations omitted; internal quotation marks omitted.) *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 646–47, 679 A.2d 929 (1996). Thus, only if the underlying complaints set forth a cause of action within the coverage of the plaintiff's workers' compensation policy did the policy obligate the defendants to defend the plaintiff in those actions. We turn

---

for benefits filed under the workers' compensation act. The plaintiff contends that, pursuant to *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 806, 646 A.2d 806 (1994), the defendants were required to raise this issue as a special defense. We do not agree. In *Bennett*, we discussed the general prohibition of General Statutes § 38a-336 against recovery in excess of the limits of the uninsured motorist coverage provided by an insured's policy. Id., 800–801. We stated that an insurer should raise issues of a policy's limitation of liability by special defense. Id., 806. The present case, however, does not involve issues of limitation of liability, but rather involves a claim of noncoverage of insurance—a matter of policy interpretation.

our attention, therefore, to the terms of the plaintiff's workers' compensation policy.

The plaintiff maintains that the language of the coverage provisions of the workers' compensation policy is ambiguous. Part 1 (C) of the plaintiff's policy provides that the insurer has "the right and duty to defend at [its] expense any claim, proceeding or suit against [the plaintiff] for benefits payable by this insurance. . . . [The insurer has] no duty to defend a claim, proceeding or suit that is not covered by this insurance." Part 1 (B), pertaining to benefits payable by the workers' compensation policy, provides that the insurer "will pay promptly when due the benefits required of [the plaintiff] by the workers compensation law." Thus, the policy unambiguously states that the defendants are obligated to defend any claim, proceeding or suit against the plaintiff for benefits payable by the workers' compensation policy. The benefits payable by the workers' compensation policy are limited to only those required of the plaintiff by workers' compensation law. Consequently, the defendants are obligated to defend any claim, proceeding or suit against the plaintiff for benefits payable by the plaintiff pursuant to the workers' compensation law. Thus, if the plaintiff is not required to pay benefits under the workers' compensation law, the coverage of the policy clearly is not invoked and, therefore, the defendants' duty to defend is not triggered. See *Plainville* v. *Travelers Indemnity Co.*, 178 Conn. 664, 425 A.2d 131 (1979) (insurance contract covering workers' compensation liability does not cover claims for benefits pursuant to General Statutes § 7-433c).

In the plaintiff's view, the use in part 1 (C) of the word "suit" in the phrase "defend . . . any claim, proceeding or suit against [the plaintiff] for benefits payable by this insurance" creates an ambiguity because, in order to recover workers' compensation benefits,

employees bring "claims" rather than "suits" against their employers. We previously have stated, however, that we "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." (Internal quotation marks omitted.) *Schultz* v. *Hartford Fire Ins. Co.*, 213 Conn. 696, 703, 569 A.2d 1131 (1990). Viewed in its entirety, the policy language unequivocally indicates that the policy was intended to provide coverage only for claims for workers' compensation benefits. Because the underlying claims were filed in federal court, not with the workers' compensation commission, and did not state any claims for workers' compensation benefits, the underlying claims are not within the purview of the plaintiff's workers' compensation policy. We conclude, therefore, that the defendants had no duty under the plaintiff's workers' compensation policy to defend the plaintiff against the underlying claims.

## II

The plaintiff next argues that the trial court improperly concluded that the defendants had no duty pursuant to its commercial general liability policy to defend the plaintiff against the underlying claims. Specifically, the plaintiff maintains that the allegations set forth in the underlying complaints are covered by the policy because (1) the allegations constitute claims for slander, and (2) they also constitute claims for invasion of privacy. We disagree with both of those arguments.

The applicable provision of the plaintiff's commercial general liability policy, which is set forth at part (1) (a) of coverage B,[8] provides that the insurer "will pay those

---

[8] The plaintiff makes a claim for coverage only under coverage B, "Personal Injury and Advertising Injury Liability," and not under coverage A, "Bodily Injury and Property Damage Liability."

sums that the [plaintiff] becomes legally obligated to pay as damages because of [a] 'personal injury' . . . to which this insurance applies. [The insurer] will have the right and duty to defend any 'suit' seeking those damages. . . ." Section V (10) of the policy provides in relevant part that " '[p]ersonal injury' means injury . . . arising out of . . . [o]ral . . . *publication* of material that slanders . . . a person . . . [or] [o]ral . . . *publication* of material that violates a person's right of privacy." (Emphasis added.) Thus, in order for the allegations of the underlying complaints to fall within the policy coverage for personal injury claims, the complaints must allege personal injury arising out of the oral "publication" of material that slandered the claimants or that violated their right of privacy.

The plaintiff maintains that the claimants' allegations that Mohamed made frequent lewd and lascivious remarks to them constitute allegations of oral publication of such material. The term "publication," however, generally refers to the communication of words to a third person. See *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 27–28, 662 A.2d 89 (1995); *Yavis* v. *Sullivan*, 137 Conn. 253, 261–62, 76 A.2d 99 (1950). Webster's Third New International Dictionary defines "publication" as the "communication (as of news or information) *to the public*." (Emphasis added.) Publication is defined in Black's Law Dictionary (6th Ed. 1990) as the "communicat[ion] [of] defamatory words orally . . . to some *third person* capable of understanding their defamatory import . . . ." (Emphasis added.) Common sense dictates that a lay person would understand the term "publication" to mean the communication of words to a third person. Because the underlying complaints did not allege "publication" of material to a third party, but instead were based entirely on comments directly made only to the claimants, we conclude that the complaints do not set

forth allegations of a personal injury to which the plaintiff's commercial general liability policy applies. The policy, therefore, does not provide coverage for the underlying complaints, and, consequently, the defendants had no duty pursuant to the commercial general liability policy to defend the plaintiff in the underlying actions.

### III

The plaintiff's final contention is that, even if the underlying claims are not within the purview of its workers' compensation and commercial general liability policies, the plaintiff's umbrella policy nevertheless obligated the defendants to defend the plaintiff against the underlying claims. The defendants argue, however, that policy exclusions contained in the umbrella policy explicitly preclude coverage for the underlying claims.[9] We agree with the defendants.

The applicable provisions of the umbrella policy provide coverage for personal injury and bodily injury. The policy defines "[p]ersonal injury," in relevant part, as an injury other than bodily injury arising out of "[d]iscrimination because of . . . sex . . . ."[10] "Bodily injury" is defined as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death

---

[9] Both parties agree that the trial court improperly determined that there was no coverage under the umbrella policy because there was no coverage under either the workers' compensation policy or the commercial general liability policy. The defendants argue, however, that the trial court properly concluded that there was no coverage under the umbrella policy because policy exclusions explicitly precluded coverage. Thus, we address only whether the umbrella policy exclusions preclude coverage for the underlying claims.

[10] The umbrella policy also includes within the definition of personal injury: "Oral . . . publication of material that slanders . . . a person . . . [or] [o]ral . . . publication of material that violates a person's right of privacy . . . ." For the reasons stated in part II of this opinion, we find no coverage for those personal injuries.

resulting from any of these at any time." Exclusion 3 (h) of the umbrella policy provides, however, that the policy does not apply to " '[p]ersonal injury' consisting of discrimination directly or indirectly *related to the employment* or prospective employment of any person or persons by any insured." (Emphasis added.)

The plaintiff contends that the personal injury provisions of the umbrella policy obligated the defendants to defend the plaintiff against the underlying claims because those claims alleged discrimination on the basis of sex. The defendants argue, to the contrary, that, because the underlying complaints were brought to remedy discrimination directly related to the claimants' employment, those claims specifically are excluded from umbrella policy coverage by exclusion 3 (h). The plaintiff concedes that the defendants' interpretation of the scope of exclusion 3 (h) is plausible, but argues that the exclusion applies only to discriminatory hiring practices. We recognize that if an exclusion clause is ambiguous, it must be construed against the drafter. *Imperial Casualty & Indemnity Co.* v. *State*, supra, 246 Conn. 325. "The fact that the parties advocate different meanings of [an] exclusion clause [however] does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) *Kelly* v. *Figueiredo*, supra, 223 Conn. 37. In our view, the terms of exclusion 3 (h) are clear and unambiguous and, therefore, leave no room for construction. The exclusion explicitly precludes coverage for personal injuries that arise out of sex discrimination during employment, as well as personal injuries that arise out of sex discrimination during hiring.[11]

---

[11] See 9 G. Couch, Insurance (3d Ed. Rev. 1997) § 127:17, pp. 127-42 through 127-43 ("[e]mployment-based discrimination claims may also be placed outside of coverage by policy provisions specifically excluding claims 'arising out of employment or prospective employment of any person by any insured' ").

The underlying complaints alleged that the claimants were subjected to discrimination during their employment at the shop. Specifically, the complaints alleged that the "action[s] [were] brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment . . . ." The claims, therefore, were within policy exclusion 3 (h). Consequently, the plaintiff's umbrella policy did not provide coverage for the claims made in the underlying complaints.

The plaintiff also maintains that the underlying claims are within the purview of the bodily injury provisions of the umbrella policy. "Bodily injury" is defined in the umbrella policy as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time." Exclusion 3 (c) of the umbrella policy provides, however, that the policy does not apply to " '[b]odily injury' consisting of humiliation, mental injury or mental anguish directly or indirectly related to the employment of any person or persons by any insured."

The underlying complaints alleged injuries consisting of "mental anxiety, distress of mind and humiliation." The plaintiff concedes that exclusion 3 (c) explicitly precludes coverage for the claims of humiliation, but argues that the exclusion does not preclude coverage for the claims of mental anxiety or distress of mind. The plaintiff acknowledges that an ordinary reading of the term "mental injury" in exclusion 3 (c) would include mental anxiety and distress of mind. The plaintiff argues, however, that the use of the words "mental anguish" in the policy directly after the term "mental injury" indicates an intention to limit the meaning of "mental injury" to "mental anguish."

In our view, however, the language of the policy exclusion unambiguously evidences an intent to

exclude from policy coverage claims for humiliation, mental injury and mental anguish. If the term "mental anguish" had been intended to explain, rather than supplement, the term "mental injury," the policy would have stated "humiliation *or* mental injury, i.e., mental anguish." The claims stated in the underlying complaints for mental anxiety and distress of mind clearly are claims based upon "mental injury." Consequently, those claims are within the penumbra of exclusion 3 (c). Therefore, the plaintiff's umbrella policy did not provide coverage for the underlying claims and, consequently, the defendants had no duty to defend the plaintiff under the umbrella policy.[12]

The judgment is affirmed.

In this opinion BORDEN, NORCOTT and MCDONALD, Js., concurred.

BERDON, J., dissenting. Although I disagree with much of the majority opinion, I will limit my discussion to the majority's rejection of the plaintiff's claim that one of the defendant insurers was obligated to defend under a policy covering personal injuries "arising out of . . . [o]ral . . . publication of material that slanders . . . a person . . . [or] [o]ral . . . publication of material that violates a person's right of privacy." The majority claims that that defendant had no duty to

---

[12] The plaintiff also argues in its reply brief that the claimants' underlying complaints allege a sexual assault claim against their coworker, Mohamed, and that those allegations are sufficient to provide coverage under the bodily injury provisions of the umbrella policy. The plaintiff stated in its trial court brief: "It should be noted that the [claimants] claimed sexual assaults by a co-worker—not by [the plaintiff] or its officers or directors." Section II of the umbrella policy, entitled "WHO IS AN INSURED," provides, however, that "[n]o person is an insured as respects *bodily injury' to a fellow employee* unless insurance for such liability is afforded by the 'underlying insurance.' " (Emphasis added.) Because there is no claim that liability for the sexual assault by Mohamed against a fellow employee is afforded coverage by any underlying insurance, there is no coverage for this claim under the umbrella policy.

defend because the underlying complaints brought against the plaintiff did not properly allege publication of the relevant statements. This is simply wrong.

The majority acknowledges, as it must, that "[t]he obligation of the insurer to defend does *not* depend on whether the injured party will successfully maintain a cause of action against the insured but on whether [s]he has, in [her] complaint, stated facts which bring the injury within the coverage." (Emphasis added; internal quotation marks omitted.) Instead, it is the *possibility* of ultimate coverage that triggers the duty to defend. See *West Haven* v. *Commercial Union Ins. Co.*, 894 F.2d 540, 544 (2d Cir. 1990) ("[i]f an allegation of the complaint falls even *possibly* within the coverage, then the insurance company must defend the insured" [emphasis in original; internal quotation marks omitted]); *West Haven* v. *Liberty Mutual Ins. Co.*, 639 F. Sup. 1012, 1017 (D. Conn. 1986) (same); *Schwartz* v. *Stevenson*, 37 Conn. App. 581, 585, 657 A.2d 244 (1995) (same); see also *Lee* v. *Aetna Casualty & Surety Co.*, 178 F.2d 750, 753 (2d Cir. 1949) ("[w]hen . . . the complaint comprehends an injury which *may* be within the policy, we hold that the promise to defend includes it" [emphasis added]); *Schurgast* v. *Schumann*, 156 Conn. 471, 489, 242 A.2d 695 (1968) ("whether [insurer] had a duty to defend the . . . action . . . depends on whether the complaint in that action stated facts which *appear* to bring . . . claim of damage within the policy coverage" [emphasis added]); *Missionaries of the Co. of Mary, Inc.* v. *Aetna Casualty & Surety Co.*, 155 Conn. 104, 110, 230 A.2d 21 (1967) (same).

It is therefore of no moment that neither of the underlying complaints brought against the plaintiff by two of its former employees expressly alleged the element of publication; a very high probability of publication is implicit in both pleadings. According to each of the

underlying complaints, the "obscene, lewd and lascivi-ous remarks [and] requests" were sufficiently "fre-quent" and "repeated" that they "create[d] a sexually harassing workplace." At a bare minimum, it is possible that at least some of these remarks and requests were made in the presence of third parties—either fellow employees or patrons of the shop where the statements were made. As Judge Learned Hand put it (in an opinion from which we have recently quoted with approval[1]), "we should resolve the doubt in favor of the insured." *Lee* v. *Aetna Casualty & Surety Co.*, supra, 178 F.2d 752.

In my view, the majority's procrustean reading of the underlying complaints allows the defendant insurer to escape its contractual obligation to defend.

Accordingly, I dissent.

---

[1] *Flint* v. *Universal Machine Co.*, 238 Conn. 637, 647, 679 A.2d 929 (1996).