[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT (# 108)
Factual and Procedural Background
In April of 1997, the plaintiff, Carissa Bonito, renewed with the defendant, Cambridge Mutual Fire Insurance Company (Cambridge), her home insurance policy. Section I of the policy limits Cambridge's liability to $95,000 for the house (Coverage A), $9,500 for accessory structures (Coverage B), $66,5000 for personal property (Coverage C) and $19,000 for Loss of Use (Coverage D). Bonito also contracted with Cambridge for supplemental insurance, entitled "Superior Home Guaranteed Repair or Replacement Cost Protection Endorsement" (replacement cost endorsement). On February 17, 1997, a fire destroyed Ms. Bonito's home.
In the course of setting the claim, a dispute arose between the parties regarding the operative effect of the replacement cost endorsement. Consequently, in February of 1999, Ms. Bonito filed a three — count complaint alleging breach of contract (count one) and negligence (count two) and further requesting declaratory relief (count three) On July 16, 1999, Ms. Bonito filed a motion for a declaratory judgment in which she requested that the court rule that the replacement cost endorsement CT Page 92 proportionately increases (based on a percentage of the actual replacement cost of the dwelling Coverage A) the defendant's liability limits under Coverages B, C and D. The motion was accompanied by a memorandum of law and exhibits. In response, on September 3, 1999, Cambridge filed a memorandum of law in opposition to the plaintiff's motion.
For the reasons that follow, the plaintiff's motion for a declaratory judgment is denied.
Standard of Review
"The purpose of a declaratory judgment action . . . is to secure an adjudication of rights where there is a substantial question in dispute or a substantial uncertainty of legal relations between the parties." (Internal quotation marks omitted.) Mannweiler v. LaFlamme, 232 Conn. 27, 33, 653 A.2d 168
(1995) Declaratory judgment provides an appropriate procedural "vehicle to test the rights and liabilities under an insurance policy." St. Paul Fire Marine Ins. Co. v. Shernow,22 Conn. App. 377, 380, 577 A.2d 1093 (1990).
Discussion
The plaintiff argues that the replacement cost endorsement not only increases the defendant's liability for Coverage A but also proportionately increases its liability for Coverages B, C and D. Cambridge counters that the language of the policy is unambiguous and that the replacement cost endorsement applies only to the dwelling (Coverage A).
"It is the function of the court to construe the provisions of the contract of insurance. . . . The interpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings . . . does not necessitate a conclusion that the language is ambiguous." (Brackets in original; citations omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty CT Page 93Surety Co. of Illinois, 247 Conn. 801, 805-06, ___ A.2d ___ (1999).
The replacement cost endorsement reads, in its entirety:
 "For the premium charged, we agree to amend the present coverage amounts shown on the Declarations page in accordance with the provisions which follow: IF YOU HAVE: (1) When this Endorsement is issued agreed to insure your Dwelling under Coverage A to 100% of full replacement cost using an appraisal method acceptable to us; and (2) Allowed us at each anniversary date of this policy to adjust the premium and limits of liability for Coverages A, B, C and D and to adjust for inflation so that the limit for Coverage A equals the full replacement cost of the dwelling; and (3) Informed us, within 30 days of completion, of changes made to the dwelling during the policy term which increased the replacement cost of the dwelling 5% or more; and if you have purchased additional insurance for Coverage A equal to the amount of such cost and informed us as soon as you made this change to your dwelling; and (4) Elected to repair or replace the damaged building. WE WILL AMEND THE POLICY TO DELETE PARAGRAPH b. of "3. LOSS SETTLEMENT" UNDER "SECTION I CONDITIONS AND REPLACE IT WITH THE FOLLOWING:
 b. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following: (1) We will pay the cost and repair or replace without deduction for depreciation, but not exceeding the smallest of the following amounts. We agree that this amount may exceed the limit of liability which applies to Coverage A: (a) The cost to replace the damaged part of the building with the same materials and for the same use. (b) the amount you had to spend to repair or replace the damaged building. (2) When the cost to repair or replace the damage is more than $2,5000 or more than 5% of the amount of insurance on the building, CT Page 94 whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.
 You may disregard this replacement cost provision and make claim for loss or damage on an actual cash value basis. Then you can make claim within 180 days after loss for any additional liability brought about by this provision. This policy does not apply to land, including land on which the building or structures are located. All other provisions of this policy apply."
(Plaintiff's Memorandum, Exhibit 3, Form H-116; emphasis added).
The declarations page of the renewal policy states, in relevant part: "Supplemental Premium or Credits. Guaranteed Replacement or Repair Cost, H116, Coverage-A only $30.00" (Plaintiff's Memorandum, Exhibit 2).
The plaintiff argues that the plain language of the replacement cost endorsement supports her interpretation, i.e., that the replacement cost endorsement increases the defendant's liability for the dwelling and, also, with respect to her current insurance claim, proportionately increases the defendant's liability for other structures, personal property and loss of use (Coverages B, C and D) Alternatively., the plaintiff argues that if the term "amounts" contained in the first sentence of the replacement cost endorsement and the phrase, "to adjust the premium and limits of liability for Coverages A, B, C and D" contained in subsection 2, do not support her "plain language" argument, they, at a minimum, render the replacement cost endorsement ambiguous and, therefore, the contract must be construed in her favor, particularly, she argues, because it was drafted by the defendant.
The court disagrees. The plain language of the contract does not support the plaintiff's interpretation and the court "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."Springdale Donuts, Inc. v. Aetna Casualty Surety Co., supra,247 Conn. 809.
When read in context and viewed in its entirety, the replacement cost endorsement, specifically the substituted CT Page 95 language of paragraph b. of the "Loss Settlement" provision, unequivocally indicates that the policy was intended to provide replacement cost insurance only for the plaintiff's dwelling (Coverage A).
Conclusion
Accordingly, the plaintiff's motion for declaratory judgment is hereby denied.
It is so ordered.
By the Court
Elaine Gordon, Judge of the Superior Court