[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CROSS MOTIONS FOR SUMMARY JUDGMENT
Presently before the court are the plaintiff General Plasma, Inc.'s (General Plasma) and the defendant Reliance Insurance Company's (Reliance) cross motions for summary judgment. The parties have stipulated to the following essential facts: General Plasma was insured by Reliance under a comprehensive general liability policy (policy). The effective dates of the policy were from October 31, 1991, through October 31, 1992. In November 1991, General Plasma contracted with United Technologies Corporation (UTC) to provide services on a drum rotor assembly, which was furnished and owned by UTC.[1] General Plasma completed the work and returned the assembly to UTC on or about CT Page 539 November 21, 1991. (See Joint Trial Management Conference Report, 7/8/99, pp. 1-3.)
On November 3, 1993, UTC commenced a civil action against General Plasma; United Technologies Corporation v. GeneralPlasma, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV93-0532569 (withdrawn, December 27, 1997); in which UTC sought damages for General Plasma's allegedly negligent servicing of the assembly. General Plasma soon thereafter notified Reliance of the UTC action, and demanded that Reliance defend and indemnify pursuant to the policy. Reliance denied coverage and refused to defend General Plasma in the UTC action. Consequently, General Plasma retained legal counsel and incurred expenses associated with its defense at a cost to General Plasma of $179,234.19. General Plasma and UTC settled the UTC action in the amount of $200,000, which Reliance agrees was a reasonable settlement.[2]
General Plasma brings this lawsuit against Reliance seeking reimbursement for funds paid to settle the UTC action and for attorney's fees and costs incurred in the UTC action as well as in the present action. Pursuant to Practice Book § 17-44 et seq., General Plasma and Reliance filed cross motions for summary judgment with accompanying documentation. General Plasma moves for summary judgment on the ground that Reliance had a duty, pursuant to the policy, to defend and indemnify it against UTC's claims. Reliance moves for summary judgment, however, on the ground that the aircraft product exclusion contained in the policy excludes coverage.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, 279,567 A.2d 829 (1989). "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Since the "construction of a contract of insurance presents a question of law"; (internal quotation marks omitted) Imperial Casualty Indemnity Co. v. State,246 Conn. 313, 325, 714 A.2d 1230 (1998); the court may decide the issue on a motion for summary judgment.
The issues presented in the parties' respective motions for summary judgment are whether Reliance had a duty to defend CT Page 540 General Plasma in the UTC action; whether Reliance had a duty to indemnify General Plasma for the amount paid in settlement of that action; and whether General Plasma is entitled to recover expenses, including attorney's fees, that it has incurred in bringing the present action against Reliance.
 I DUTY TO DEFEND AND DUTY TO INDEMNIFY
General Plasma argues that, pursuant to the policy, Reliance had a duty to defend and indemnify it against UTC's claims. Reliance argues, on the other hand, that the aircraft products exclusion in endorsement number 4 to the policy excludes coverage of UTC's claims. Whether Reliance had a duty to defend and indemnify General Plasma is determined by the language of the policy in question. See Springdale Donuts, Inc. v. Aetna Casualty Surety Co. of Illinois, 247 Conn. 801, 805-806, 724 A.2d 1117
(1999).
"It is the function of the court to construe the provisions of the contract of insurance. Gottesman v. Aetna Ins. Co.,177 Conn. 631, 634, 418 A.2d 944 (1979). The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy. Aetna Life CasualtyCo. v. Bulaong, 218 Conn. 51, 58, 588 A.2d 138 (1991). The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . Imperial Casualty Indemnity Co. v. State, 246 Conn. 313, 324-25, 714 A.2d 1230
(1998). A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous. . . . The fact that the parties advocate different meanings of the [insurance policy] does not necessitate a conclusion that the language is ambiguous. . . .Kelly v. Figueiredo, 223 Conn. 31, 37, 610 A.2d 1296 (1992)." (Internal quotation marks omitted.) Springdale Donuts, Inc. v.CT Page 541Aetna Casualty Surety Co. of Illinois, supra, 247 Conn. 805-06.
The court notes "at the outset that it is well settled that an insurer's duty to defend, being much broader in scope and application than its duty to indemnify, is determined by reference to the allegations contained in the [underlying] complaint. . . . The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage. If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . "(Citations omitted; internal quotation marks omitted.) Springdale Donuts, Inc. v. Aetna Casualty Surety Co.of Illinois, supra, 247 Conn. 807, quoting Flint v. UniversalMachine, 238 Conn. 637, 646-47 (1996). Since the parties to the present action have stipulated to the governing facts, the court is limited to determining whether, in the absence of a policy exclusion, the claimed injuries alleged in the UTC action are covered under the policy at issue, and whether Reliance had a duty to defend and indemnify General Plasma in the UTC action.
The policy at issue is a comprehensive general liability policy. The effective policy period was from October 31, 1991, through October 31, 1992. Under the policy, Reliance agreed "to pay on behalf of the insured all sums which [General Plasma] became legally obligated to pay as compensatory damages by reason of liability imposed upon [General Plasma] by law, or assumed by [General Plasma] under written contract, because of [d]amage to, or destruction of, or loss of use of tangible property resulting from an occurrence[3] during the Policy Period." Reliance also agreed . . . [i]f claim is made or suit brought within Canada or the United States of America, [to] defend such claim or suit against the insured, even if such claim or suit is groundless, false or fraudulent, provided the company's liability with respect to such damages has not been exhausted by payment of judgment or settlements." Reliance further agreed to "[p]ay all expenses incurred by [General Plasma], all legal costs or any other costs taxed against [General Plasma] in any such suit or appeal or judgment and all interest accruing before and after entry of judgment until [Reliance] has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of [Reliance's] liability thereon."
The language of the policy is clear and unambiguous as to CT Page 542 Reliance's duty to defend and indemnify General Plasma against suits, such as the UTC action, alleging property damage. Nevertheless, Reliance argues that endorsement number 4, titled "Aircraft Products and Grounding Liability Exclusion," excludes coverage of UTC's claims against General Plasma because the drum rotor assembly is an aircraft product as defined in the referenced exclusion.
For the reasons that follow, this court finds that endorsement number 4 does not apply to UTC's claims brought against General Plasma in United Technologies Corporation v. General Plasma, supra, Docket No. 532569, because the drum rotor assembly is not an aircraft product as the term is defined in the policy. Therefore, pursuant to the policy, Reliance had a duty to defend and indemnify General Plasma against UTC's claims. Further, Reliance's refusal to defend and indemnify General Plasma constituted a breach of the policy.
The court rejects Reliance's claim that the drum rotor assembly is an aircraft product as the term is defined in endorsement number 4. Endorsement number 4 provides in relevant part "that the insurance afforded by this policy shall not apply with respect to liability arising out of aircraft products . . . [or] to personal injury or property damage included within the `Completed Operations Hazard' or the `Product Hazard' with respect to `Aircraft Products.'"[4] Aircraft products are defined as: "(1) Aircraft, including missiles or spacecraft and any ground support or control equipment used therewith; (2) Any article furnished by or on behalf of the Insured and installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft, including ground handling tools and equipment; (3) Training aids, instructions, manuals, blueprints, engineering or other advice or services and labour relating to such aircraft or articles."
In keeping with the rule that "the policy words must be accorded their natural and ordinary meaning"; Springdale Donuts,Inc. v. Aetna Casualty Surety Co. of Illinois, supra,247 Conn. 805-06; the court holds that the drum rotor assembly is not an aircraft product as defined in endorsement number 4. Examining the complaint in the UTC action, it is clear that the motor rotor assembly is a component of a jet engine. (See Plaintiff's Complaint, 11/03/93, ¶¶ 4-7, in United Technologies Corporationv. General Plasma, supra. Docket No. 532569.) It is not an aircraft, missile, spacecraft or ground or control equipment used CT Page 543 therewith, as aircraft products are defined in the first definition provided in endorsement number 4.
Secondly, the drum rotor assembly is not an aircraft product as the term is defined in the second definition. In order to be considered an aircraft product under the second definition, the article must have been (1) furnished by or on behalf of General Plasma and (2) installed in aircraft or used in connection with aircraft or for spare or replacement parts for aircraft. Although the article at issue clearly was installed in an aircraft, it is equally clear that it was neither furnished by nor on behalf of General Plasma. Rather, "the Drum Motor Assembly itself was furnished and at all times owned by UTC." (Joint Trial Management Conference Report, 7/08/99, p. 2.)
Furthermore, the drum motor assembly cannot be considered an aircraft product under the third definition because it is neither a training aid, instruction, manual, blueprint, or engineering or other advice and services, nor was the labor performed on the assembly related to such aircraft or articles as defined in the first and second definitions of aircraft products. Finally, to the extent that there is ambiguity in the terms of the exclusion provision, it must be interpreted in favor of coverage because Reliance drafted the policy. Springdale Donuts, Inc. v. AetnaCasualty Surety Co. of Illinois, supra, 247 Conn. 806. The motion for summary judgment filed by General Plasma as to the obligation of Reliance to defend and indemnify it against UTC' s claims is therefore granted. Accordingly, Reliance's motion for summary judgment is denied. Since the parties stipulated that the expenses associated with the defense of the UTC action of $179,234.19 and the settlement amount of $200,000 were reasonable, Reliance is liable to General Plasma for those amounts.
 II ATTORNEY'S FEES AND COSTS IN THE PRESENT ACTION
General Plasma argues that Reliance's failure to defend in breach of its obligation under the policy "also rendered Reliance liable to General Plasma for the expenses, including attorney's fees, incurred by General Plasma in the instant action." (Plaintiffs Memorandum of Law, 8/06/99, p. 11.) Relying on the general rule that parties to an action must shoulder their respective economic burdens of litigation, Reliance argues that CT Page 544 there is no basis in Connecticut statutory law or in the language of the policy at issue for awarding General Plasma attorney's fees incurred in the present action.
Connecticut follows the American rule. Rizzo v. Grosso,240 Conn. 58, 72, 689 A.2d 1097 (1997). Under this rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." Id. "There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Citations omitted.) Id., 72.
General Plasma has not identified any specific policy language or statutory authority under which this court could grant the requested relief. General Plasma has cited, however, several cases for the proposition that attorney's fees incurred in a declaratory action may be recovered against an insurer who breaches its obligations under an insurance policy. See ChicagoTile Ins. Co. v. F.D.I.C., 172 F.3d 601, 602-04 (8th Cir. 1999);Preferred Mutual Ins. Co. v. Gamache, 426 Mass. 93, 95-98,686 N.E.2d 989 (Mass. 1997); City of West Haven v. Liberty MutualIns. Co., 639 F. Sup. 1012, 1020 (D. Conn. 1986).[5] In addition, there is one Connecticut Superior Court decision, in which attorney's fees were awarded in a declaratory judgment action to determine whether an insurer had a duty to defend. SeeAetna Life Casualty Co. v. Gentile, Superior Court, judicial district of Waterbury, Docket No. 122259 (December 12, 1995,Sullivan, J.) (15 Conn. L. Rptr. 451).
In Aetna Life Casualty Co. v. Gentile, the court, Sullivan,J., awarded the defendant insured attorney's fees and costs when the insurer brought a declaratory judgment action to determine its duties under an insurance policy. Aetna Life Casualty Co.v. Gentile, supra, 15 Conn. L. Rptr. 454. The court reasoned that the declaratory judgment action was brought for the "convenience of the insurer plaintiff' and that the right of the insured to be furnished a defense to the declaratory judgment action "is a part and parcel of the continuing right to be furnished a defense to the underlying action." The court concluded that "[t]he insurer cannot condition the insured's continuing right to a defense by imposing upon the insured, as a condition precedent, the expenditure of extraordinary funds to preserve his right to an eventual claim for that contractual benefit." (Emphasis in original.) Id. CT Page 545
For the policy reasons articulated by the court in Missionariesof the Company of Mary, Inc., 155 Conn. 104 (1967) and Aetna Life Casualty Co. v. Gentile, supra, this court sees no reason to limit an insured's right to recover attorney's fees in a subsequent action for failure to defend merely to those where the insurer instituted the action. Whether Reliance attempted to foreclose on General Plasma's contractual right to a defense by instituting a declaratory action, or by merely refusing to defend and then waiting for General Plasma to institute the action is immaterial. General Plasma remains in the same position of expending extraordinary funds to preserve its right to a contractual benefit. The only condition precedent under the policy, which was issued to General Plasma, is that any claims against General Plasma must be covered under the policy. When General Plasma sought a defense to UTC's claims, Reliance made the conscious choice to refuse to defend, rather than defend under a reservation of its right to contest coverage. Although this precise claim was withdrawn and therefore left undecided by the Missionaries case, in awarding the plaintiffs the settlement amount, expenses, attorneys fees and interest incurred in the underlying action, the Supreme Court held, "reason dictates that the defendant should reimburse the plaintiff for the full amount of the obligation reasonably incurred by it." (Emphasis added.)Missionaries, supra, 155 Conn. 114. Since the expenses incurred in a subsequent action to enforce the underlying contractual obligation also appear to be "reasonably incurred", under all the circumstances, Reliance should reimburse General Plasma for its legal expenses incurred in the instant action. See also Black v.Goodwin, Loomis Britton, Inc., 239 Conn. 144, 152-53,681 A.2d 293 (1996) ("An insurer who chooses not to provide its insured with a defense and who is subsequently found to have breached its duty to do so must bear the consequences of its decision, including the payment of any reasonable settlement agreed to by the plaintiff and the insured.")
As one court noted, if the American rule were followed in breach of duty to defend cases, "it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract CT Page 546 right mentioned above." Preferred Mutual Ins. Co. v. Gamache, supra, 426 Mass. 93, 96-97. "After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof." Id., 96.
Chicago Title Ins. Co. v. F.D.I.C., supra, 172 F.3d 601, provides further support for awarding attorney's fees and costs to the insured in the present action. In that case, as in the case at bar, the insured requested attorney's fees and costs incurred in a subsequent declaratory judgment action. The insured argued that "because [the insurer] had not reimbursed the [insured] for defense fees and costs until forced to so by the district court that this refusal to pay was a breach of duty to defend which, in turn, authorized an award of attorney's fees and costs in this [subsequent] litigation." Id., 604. In awarding the insured attorney's fees and costs incurred defending the subsequent action, the court concluded that "[w]hen a breach of the duty to defend occurs, the insured is entitled to be reimbursed for attorneys fees and costs expended to force the insurer to pay for the defense." (Internal quotation marks omitted.) Id., 606. The court reasoned: "A breach of the contractual duty to defend usually occurs by wrongfully refusing to defend the insured. . . . This does not mean that the insurer cannot contest coverage. If an insurer faithfully fulfills its duty to defend its insured and also brings a declaratory judgment action to determine insurance coverage, then there will be no breach of the duty to defend. . . . Thus, in a scenario where the insurer fulfills its duty to defend and also contests coverage, the insured is not entitled to attorney's fees and costs in the declaratory judgment action to determine coverage. Attorney's fees and costs are only awarded for the declaratory judgment action if there was a breach of the duty to defend in the underlying litigation." (Citations omitted.) Id., 605.
The present action is not a case in which the insurer fulfilled its duty to defend and then contested coverage. Reliance refused to defend and indemnify General Plasma in violation of the clear and unambiguous language of the policy. Because the court has found that Reliance breached its duty to defend and indemnify General Plasma, it must now bear the consequences of its decision. Therefore, General Plasma is entitled to reasonable attorney's fees and costs incurred in this action. Accordingly, General Plasma is hereby ordered to submit appropriate papers in support of its claim for attorney's fees incurred in the CT Page 547 prosecution of this action within thirty days.
 CONCLUSION
Pursuant to an insurance policy issued to General Plasma, Reliance had a duty to defend and indemnify General Plasma in the underlying UTC action, and it breached that duty when it refused to do so. Pursuant to its contractual duty to indemnify, Reliance is liable for the $200,000 that General Plasma paid to UTC in settlement of United Technologies Corporation v. General Plasma, supra, Docket No. 532569. Reliance is also liable for reasonable attorney's fees and costs that General Plasma incurred in defending the UTC action in the amount of $179,234.19 in accordance with the agreement of the parties.[6] Further, the court hereby orders that General Plasma is entitled to reasonable attorney's fees and costs incurred in bringing the present action.
The plaintiff General Plasma's motion for summary judgement is hereby granted. The defendant Reliance's motion for summary judgment is denied.
Peck, J.