DAINTY RUBBISH SERVICE, INC. *v.* BEACON HILL ASSOCIATION, INC.
(11619)

DUPONT, C. J., O'CONNELL and LANDAU, Js.

Argued May 10—decision released August 17, 1993

*Richard H. Pentore,* for the appellant (plaintiff).

*Domenique S. Thorton,* with whom, on the brief, was *Nancy Conaway-Raczka,* for the appellee (defendant).

O'CONNELL, J. This is a breach of contract action in which the plaintiff appeals from a judgment for the defendant rendered after a trial to the court. The plaintiff claims that the trial court improperly (1) construed the contract as being terminable at any time upon the giving of sixty days notice, (2) found that the defendant terminated the contract in a timely fashion, (3) found that the contract was a contract of adhesion, (4) applied the theory of estoppel, (5) found the contract to be unenforceable due to mutual mistake, and (6) found that the plaintiff failed to mitigate his damages. We reverse the judgment of the trial court.

The plaintiff corporation is in the garbage and trash collection business and the defendant is a residential condominium association.[1] The parties entered into a written contract dated October 1, 1989,[2] in which the plaintiff agreed to collect and remove garbage and trash from the defendant's condominiums. The plaintiff's president personally prepared the contract. On October 31, 1990, the defendant's president signed a letter purporting to give the plaintiff a sixty day notice

---

[1] The defendant had been organized as a not-for-profit Connecticut corporation. Shortly before this contract was executed, the corporation was dissolved by the secretary of the state for failure to file its biennial report. General Statutes § 33-387 (b). The record is silent concerning reinstatement following this dissolution. Both parties, however, treated the defendant as having valid corporate existence. We will do likewise. See *Blue* v. *Boroughf,* 11 Conn. App. 213, 216, 526 A.2d 875 (1987).

[2] In view of our disposition of this appeal, an issue raised by the defendant concerning the exact date of execution is irrelevant.

of termination of the contract as of December 31, 1990. Additional facts are included in discussion of the individual issues.

The principal issue concerns the nature of the parties' agreement. The plaintiff claims that the contract was for a five year term and was automatically renewable each year thereafter unless terminated by the defendant by giving sixty day notice prior to any anniversary date commencing with the first anniversary date after the expiration of the five year term. The defendant argues that the contract was terminable any year by a sixty day notice of termination.

The dispute arises from the use of the term "anniversary date" in two sections of the contract. The first paragraph of the contract provides that the plaintiff's services would commence "the first day of October, 1989 for a period of five (5) years." The paragraph concludes by stating that there would be a cost of living increase on the service charge "at each anniversary date."[3] On the second page, a paragraph entitled "Renewal" provides that the agreement would be automatically renewed "for a period of (1) year as of its anniversary date" unless the defendant notified the plaintiff of its "desire to terminate the service provided hereunder not less than sixty (60) days prior written notice."[4]

[3] The paragraph provides: "THIS AGREEMENT, for waste collection and removal is made and entered into this first day of October, 1989 by and between BEACON HILLS CONDO ASSOCIATION (hereinafter referred to as 'Account') and DAINTY RUBBISH SERVICE, INC., (hereinafter referred to as 'Dainty'). Dainty hereby agrees to perform the services set forth on the attached Schedule A, attached hereto and incorporated herein by reference, commencing the first day of October, 1989 for a period of (5) five years, payable according to the following schedule: The rate for the period commencing October 1, 1989 will be THREE THOUSAND ONE HUNDRED ELEVEN AND 50/100 DOLLARS ($3,111.50) a month plus tax. There will be a [COL MRB] % increase on the service charge commencing at each anniversary date."

[4] That paragraph provides: "This agreement shall be automatically renewed for a period of (1) year as of its anniversary date, unless Account

At trial, the plaintiff acknowledged that the "anniversary date" mentioned in each paragraph was the anniversary of the contract's execution. He explained, however, that in the cost of living paragraph, the term referred to a date commencing one year after the contract was executed (i.e., October 1, 1990), while in the automatic renewal paragraph, the term referred to a date commencing at the expiration of the five year contractual period (i.e., October 1, 1994). The defendant argued that in light of the two uses of the term, the contract was ambiguous and must be construed against the plaintiff. The trial court agreed and concluded that the contract was an agreement for one year rather than five years and that the defendant had properly terminated it.

The trial court relied on the principle that "[i]t is *generally* accepted . . . when two or more meanings may fairly be given to language in a contract, the language is to be construed against the one who drew it . . . and, likewise, the language of a contract is *typically* construed most strongly against the party whose language it is and for whose benefit it was inserted." (Citation omitted; emphasis added.) *Sturman* v. *Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983). The court's reliance on this principle, however, was misplaced. Before this rule of construction may be applied, there must be a determination that the terms of the contract are actually ambiguous. *Kelly* v. *Figueiredo,* 223 Conn. 31, 37, 610 A.2d 1296 (1992). In the present case, the language in each clause is sufficiently clear. The fact that the defendant argues to the contrary does not necessitate a conclusion that the term is ambiguous. Id. Consequently, the issue before the trial court was not the

shall have notified Dainty in writing, of its desire to terminate the service provided hereunder not less than sixty (60) days prior written notice."

interpretation of ambiguous language, but rather, the construction of a contract containing inconsistent or conflicting clauses.[5]

In treating the issue as one of ambiguity, the trial court rendered meaningless the clause providing that the plaintiff's services were to continue "for a period of five (5) years." Parties do not ordinarily insert meaningless provisions in their agreements and, therefore, if it is reasonably possible to do so, every provision must be given effect. *Mack Financial Corporation* v. *Crossley*, 209 Conn. 163, 168–69, 550 A.2d 303 (1988); *Hatcho Corporation* v. *Della Pietra*, 195 Conn. 18, 23, 485 A.2d 1285 (1985); *Roby* v. *Connecticut General Life Ins. Co.*, 166 Conn. 395, 402–403, 349 A.2d 838 (1974); *Connecticut Co.* v. *Division 425*, 147 Conn. 608, 617, 164 A.2d 413 (1960). We are reluctant to conclude that a contractual provision "constitutes a meaningless gesture by the parties." *Mack Financial Corporation* v. *Crossley*, supra, 169. The rules of construction "dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Citations omitted.) *Dugan* v. *Grzybowski*, 165 Conn. 173, 179, 332 A.2d 97 (1973); *Eastern Bridge & Structural Co.* v. *Curtis Building Co.*, 89 Conn. 571, 576, 94 A. 921 (1915).[6]

---

[5] "While interpretation and construction are generally regarded as synonyms and used interchangeably, it is not only possible, but desirable to draw a distinction. The word 'interpretation' is used with respect to language itself; it is the process of applying the legal standard to expressions found in the agreement in order to determine their meaning. 'Construction,' on the other hand, is used to determine, not the sense of the words or symbols, but the legal meaning of the entire contract . . . ." 4 S. Williston, Contracts (3d Ed. Jaeger 1961) § 602, p. 320.

[6] This principle is so well embodied in the law that it even applies to the construction of insurance policies; see *Kelly* v. *Figueiredo,* 223 Conn. 31,

In the present case, the construction set forth by the plaintiff is reasonable, given the different contexts within which the term is used in the two paragraphs. Unlike the construction employed by the trial court, the plaintiff's construction gives effect to all the clauses of the contract. So construed, the contract was for a five year term, automatically renewable each year thereafter unless terminated by the defendant by giving a sixty day notice commencing with the first anniversary date after the expiration of the five year term. In addition, the amount due for services rendered would be adjusted annually according to the cost of living clause commencing at the conclusion of the first year after execution. Accordingly, the trial court improperly concluded that the contract was for a one year term.

Because we conclude that this was a five year contract, the defendant had no right to terminate it short of the five year expiration date. We, therefore, do not reach the second claim, which is concerned with the validity of the defendant's attempted early termination.

The plaintiff's third claim challenges the trial court's finding that this was a contract of adhesion. The hallmark of a contract of adhesion is that its terms "are not subject to the normal bargaining processes of ordinary contracts." *Aetna Casualty & Surety Co.* v. *Murphy*, 206 Conn. 409, 416, 538 A.2d 219 (1988). In the present case, the contract, which was only two double-spaced pages long and drafted by the plaintiff's president, was subjected to the bargaining process. This is

36, 610 A.2d 1296 (1992); *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.*, 153 Conn. 618, 622, 220 A.2d 32 (1966); notwithstanding the law's predilection toward construing contracts of insurance in favor of the policyholder and against the insurance company. See *Kelly* v. *Figueiredo, supra*, 36–37; *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991); *Beach* v. *Middlesex Mutual Assurance Co.*, 205 Conn. 246, 250, 532 A.2d 1297 (1987).

evident in the addition of two amendments and clarifying language to the contract by the defendant's president, Marcia L. Baker. At the bottom of the contract's second page, Baker wrote: "With the proviso that if we can secure Middletown [municipal trash collection] services, we can terminate this contract." She further wrote: "We will also be presented with an acceptable way to handle recycling mandated in January, 1991 by the State of Conn." Additionally, Baker altered the contract's first page, which originally provided for an unquantified yearly increase in the service charge. She wrote and initialed on that section of that contract, "COL," thereby specifying that the increase would be a cost of living increase. Accordingly, because the contract itself reveals that it was subjected to negotiation, the trial court improperly found that it was one of adhesion.

The plaintiff next claims that the trial court improperly concluded that the plaintiff was estopped from denying that the contract was subject to renegotiation after one year because the plaintiff had indicated a willingness to renegotiate it. "There are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *DeLuca* v. *C. W. Blakeslee & Sons, Inc.,* 174 Conn. 535, 544–45, 391 A.2d 170 (1978). The trial court made no factual finding of misleading words or conduct on the plaintiff's part that were intended to influence the defendant to act to its detriment, nor did the trial court make a finding that the defendant changed its position as a result of any misleading conduct on the plaintiff's part. We, therefore, conclude that the trial court improperly applied the theory of estoppel.

Finally, the plaintiff contends that the trial court improperly found that the contract was unenforceable because of mutual mistake. The court equated mutual mistake with the ambiguity it found as to the construction of the term "anniversary date." We have concluded that there was no ambiguity as that term is used in the two paragraphs of the contract. In any event, mutual mistake exists where both parties are mutually mistaken about the same material fact. *Buol Machine Co.* v. *Buckens,* 146 Conn. 639, 641, 153 A.2d 826 (1959). There is no evidence that both parties were mutually mistaken about the same fact. They simply disagreed on the meaning of the contract. Consequently, the trial court improperly found that there was a mutual mistake.

We conclude that the plaintiff proved that the defendant breached the contract and that the judgment must be reversed. The issue of the plaintiff's damages was fully litigated, but because of the trial court's conclusion as to the defendant's liability, it made no findings concerning damages.

The judgment is reversed and the case is remanded with direction to render judgment for the plaintiff and to determine damages.

In this opinion the other judges concurred.