[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. CT Page 2419
The plaintiffs, Carlo and Carol Tavarozzi, have filed the instant matter seeking specific performance of a contract they entered into on September 28, 1999 for the purchase of a certain parcel of undeveloped real property known as lot 16, Catherine Drive, Kensington, Connecticut. The property was owned by the defendants George J. Emmanuel and his nephew, Thomas G. Emmanuel, d/b/a Epsilon Associates.
The trial commenced on December 13, 2000[1] and the parties filed briefs and argued on December 21, 2000. The evidence concerning the listing and the sale of the property was not disputed. Essentially, the defendants listed this property, along with several others in their subdivision, with Century 21 Clemens and Sons Realty, Inc., through agent Kathleen A. Zdeb on December 4, 1998. The agreement expired on March 7, 1999 but was ultimately extended by three modifications to December 7, 1999. The plaintiffs' attention was first drawn to the development by an advertisement placed by Clemens and Sons Realty, Inc. in the September, 1999 edition of The Real Estate Book. Moreover, the plaintiffs introduced a copy of a September 24, 1999 fax sent by Kathleen Zdeb which referenced five Catherine Estates lots for sale including the subject lot. Century 21's sign was still on the property at the time of the plaintiffs' offer on September 27, 1999. The defendants have made no claim that their real estate agent had no authority to list or sell the property. After an initial viewing, the plaintiffs consulted with Ms. Zdeb and revisited the property with her prior to making their offer. They testified that the property had a beautiful view and that for the first time, after inspecting many parcels, they were both in agreement to purchase this land and build their dream house.
After some negotiation over the price, the parties entered into a contract the next day with an agreed upon purchase price of $105,000. Thomas G. Emmanuel, the partner who had signed the listing modifications, signed the contract on behalf of Epsilon Associates. Upon returning home from the beach, George J. Emmanuel called the owner of the lot abutting lot 16 on the south, Mr. Joe Capasso, to tell him that he had a buyer willing to purchase the lot for $105,000 and to "make up his mind."
Unbeknownst to Thomas Emmanuel, George Emmanuel's son, George J. Emmanuel, Jr., the owner of the lot abutting lot 16 on the north and Joe Capasso, had previously discussed with George Emmanuel purchasing lot 16 as a buffer lot for both parcels. Evidently, the initial concept had the two owners splitting the asking price of $105,000, but George Jr. was unable to afford the purchase price and an oral offer of $100,000 from Mr. Capasso had been rejected. The discussions had never been consummated and at no time did either George, Jr. or Joe Capasso ever enter into a CT Page 2420 written contract with Epsilon. Mr. Capasso did testify" that in June, 1999 he asked George Emmanuel to have the sign removed and even called the realtor but was told that the owner would have to order the removal. It was never removed.
Mr. George Emmanuel testified that he met with the plaintiffs to discuss the Tavarozzi's proposed home but did not tell them that he had an offer from Mr. Capasso. Nor did he tell them that he wanted to keep the lot natural; in fact, he testified that if Mr. Capasso did not make an offer, he would sell to the plaintiffs. After his meeting, Mr. Emmanuel called his lawyer and discussed the meaning of a certain provision in the contract. Having not drafted the contract, his lawyer did not know why the provision was drafted with the particular language. In fact, the contract was drafted by Kathleen Zdeb and contained a rider which included, inter alia, two provisions that made the contract contingent upon review and approval by attorneys for both the seller and the buyer within 14 days after acceptance.[2] The defendant's counsel interpreted the provision to allow revocation and based on that interpretation, Mr. Emmanuel ordered his counsel to revoke the contract.
The controversy in this case stems from this provision because the sellers maintain that it can be used to void the contract for any reason whatsoever as long as the rejection is done by an attorney within the specified time period. The buyers argue that the provision is more restricted and must relate to an attorney's actual review of the provisions and terms of the contract. They maintain that it cannot be used as a device to obtain a result outside the scope of review, such as to renegotiate a higher price, or simply to void the agreement because of receipt by a third party of a better proposal or, as the defendants maintain, for any reason.
 II.
Neither party has provided this court with a case directly on point. The plaintiffs argue that the provision must be construed in line with traditional rules of construction. First, they argue that the intent of the parties should be effectuated; Lake Garda Improvement Assn. v.Battistoni, 160 Conn. 503, 511, 280 A.2d 877 (1971), and there is no language in the contract which simply states that "either party may cancel this contract for any reason within fourteen days." The plaintiffs stress that if the contract can be terminated, as argued by the defendants, for any reason, this interpretation would render the added requirement of attorney review and approval meaningless and thus in contravention of our case law. Regency Savings Bank v. WestmarkPartners, 59 Conn. App. 160, 756 A.2d 299 (2000). Additionally, they maintain that the defendants' interpretation would also render many of CT Page 2421 the other riders meaningless as well. They further note that the contract was prepared by the defendant's agent and thus any question should be resolved against the party that drafted the contact.[3] Cameron v.Avonridge, Inc., 3 Conn. App. 230, 233, 486 A.2d 661 (1985) (court must construe contractual terms against the drafter when there is an ambiguity). Finally, the plaintiffs argue that the defendants' interpretation violates the covenant of good faith and fair dealing; seeMiddletown Commercial Associates Ltd. Partnership v. Middletown,53 Conn. App. 432, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657
(1999), and that they acted in good faith and in reliance that they had a contract.
The defendants first stress that since the provision constituted a condition precedent that was not fulfilled, no contract ever came into existence. Lach v. Cahill, 138 Conn. 418, 421, 85 A.2d 481 (1951). They next argue, that the contract must be interpreted to give effect to the parties' intent and that the language of the provision is clear and unambiguous. They maintain, although they offered no testimony, that the rider language is purposefully redundant to alert the parties of their rights. They acknowledge that their interpretation makes many of the other provisions in the rider "extraneous." Finally, the defendants maintain that they acted in good faith, but that an honest mistake occurred in this "family run partnership [where] one hand didn't know what the other was doing." This court does not agree with the defendants' arguments.
"A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance. . . . A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. . . . If the condition is not fulfilled, the right to enforce the contract does not come into existence." (Internal quotation marks omitted.) Funarov. Baisley, 57 Conn. App. 636, 640, 749 A.2d 1205, cert. denied,254 Conn. 902, 755 A.2d 218 (2000), quoting Sicaras v. Hartford,44 Conn. App. 771, 780, 692 A.2d 1290, cert. denied, 241 Conn. 916,696 A.2d 340 (1997).
Although the attorney approval provision constitutes a condition precedent, the defendants' interpretation and utilization of the provision vitiates any reliance on the condition. First, the defendants' translation stretches any common sense construction of the phrase. If the defendants (or the plaintiffs) wished to include a provision which gave either side the right to void the contract, they could have easily included a provision which simply stated that either party could void, cancel or terminate this contract within fourteen days without reason. They did not. CT Page 2422
Moreover, if the defendants wished to truly delegate the right to any attorney, they could have included a provision which stated that the contract could be rejected by the attorney within fourteen days. However, the defendants here did not. Rather, the defendants torture the meaning of a perfectly appropriate condition allowing attorney review and approval of contract provisions to justify their attempt to reject the contract. Such was the case in McKenna v. Case, 123 App.Div.2d 517,507 N.Y.S.2d 777 (1986) in which the court held, in connection with similar language in a real estate contract, that the seller's instructions to his attorney to disapprove a contract constituted bad faith and thus a waiver of the condition. But see Ulrich v. Daly,225 App.Div.2d 229,650 N.Y.S.2d 496 (1996) (holding that absent bad faith, an attorney approval clause does not prohibit the consideration of extrinsic evidence and further noting that certain extrinsic evidence, such as prevailing mortgage rates, must be considered in reviewing the contract).
In Tallmadge Bros., Inc. v. Iroquois Gas Transmission System,252 Conn. 479, 498, 746 A.2d 1277 (2000), our Supreme Court stated that "[o]ur interpretation of . . . contract provisions is guided by well established principles of contract law. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. Lawson v. Whitey's' Frame Shop, 241 Conn. 678, 686,697 A.2d 1137 (1997) . . . Pesino v. Atlantic Bank of New York,
[244 Conn. 85, 91-92, 709 A.2d 540 (1998)].'"
In applying these rules, this court must first review the intent of the parties. At trial, however, neither the plaintiffs nor the defendants testified about the inclusion of the specifics of the language; rather, Ms. Zdeb stated that she alone added the language as she has done in all her contracts ever since some attorney added it to a contract years ago. Yet, it is clear from all the evidence that the intention of Epsilon Associates and both Thomas Emmanuel and George Emmanuel was to sell the subject lot. It had been listed, posted with a sign, and advertised. CT Page 2423 While George may have wanted the lot to remain undeveloped to enhance his son's home, he clearly did not gift it to him. Nor, did he ever enter into a formal contract with his son or Mr. Capasso. He testified that he was tired of paying taxes on the lot and wanted to sell it. He did not tell his nephew and partner, Thomas, of his wish to assist his son and Thomas clearly thought he was properly and finally selling the lot on behalf of the partnership on September 28, 1999.
In attempting to sensibly apply the contested provision to the others in the rider, this court cannot adopt the expansive view advocated by the defendants. The condition can not have that broad meaning while at the same time allowing the other provisions to have any meaning. For instance, there would be no reason to include provision three allowing the buyer's attorney's review of the declaration of restrictions and covenants; provision four which states that if "Buyer's attorney disapproves Items 1 3. . . .;" provision five concerning the desired location of a house; provision seven concerning approval by Rocky Hill that the lot is buildable; or provision eight requiring financial proof. (Emphasis added.) All of these provisions have a similar fourteen day limitation and the defendants' interpretation renders them not only redundant but meaningless.
In Enfield Pizza Palace, Inc. v. Insurance Co. of Greater New York,59 Conn. App. 69, 755 A.2d 931 (2000), the Appellate Court stated, "[w]e are reluctant to conclude that a contractual provision constitutes a meaningless gesture by the parties. . . . The rules of construction dictate giving effect to all the provisions of a contract, construing it as a whole and reconciling its clauses. . . . Where two clauses which are apparently inconsistent may be reconciled by a reasonable construction, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Internal quotation marks omitted.) Id., 75, quoting Dainty RubbishService, Inc. v. Beacon Hill Assn., Inc., 32 Conn. App. 530, 534,630 A.2d 115 (1993).
While not alleged in the complaint, the plaintiffs argue that the sellers' conduct violates the covenant of good faith and fair dealing.[4]
In Middletown Commercial Associates Ltd. Partnership v. Middletown,
supra, 53 Conn. App. 437, the court stated that: "`[e]very contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. Habetz v. Condon, 224 Conn. 231,238, 618 A.2d 501 (1992)' . . . Gupta v. New Britain General Hospital,239 Conn. 574, 598, 687 A.2d 111 (1996). "Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. Magnon v. AnacondaCT Page 2424Industries, 193 Conn. 558, 567, 479 A.2d 781 (1984).'"
It is clear that the plaintiffs acted in good faith and in reliance on the contract as they made the required deposits, obtained the required financial statements and retained the services of an architect. Ms. Zdeb even contacted the Rocky Hill building officials to obtain the required assurance that the lot was an approved building lot. In Warner v.Konover, 210 Conn. 150, 155, 553 A.2d 1138 (1989), the court noted that "good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith' because they violate community standards of decency, fairness or reasonableness." 2 Restatement (Second), Contracts (1981) § 205; see also E.A. Farnsworth, Contracts (1982) § 7.17, pp. 526-28. Another commentator has suggested that, in arm's length transactions, the good faith performance doctrine permits the exercise of discretion for any purpose reasonably within the contemplation of the parties but forbids the exercise of discretion for the purpose of recapturing opportunities forgone at the formation of the contract. S. Burton, "Breach of Contract and the Common Law Duty to Perform in Good Faith," 94 Harv.L.Rev. 369, 378-92 (1980). The buyers certainly suggest (and the evidence could reasonably be interpreted to indicate) that Mr. George Emmanuel was utilizing provision two solely to renew the negotiations with Mr. Capasso. This court need not reach that conclusion.[5] The court does note, however, that without an express clause clearly authorizing termination, the use of provision two for such purpose would violate the covenant as expressed above.
 III.
Our Supreme Court has stated that "an action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles." Frumento v. Mezzanotte, 192 Conn. 606,615, 473 A.2d 1193 (1984). "The determination of what equity requires in a particular case . . . is a matter for the discretion of the trial court." (Internal quotation marks omitted.) Kahalik v. Bernardo,184 Conn. 386, 395, 439 A.2d 1016 (1981). The plaintiff must prove that he was ready willing and able to purchase the property at all times.Frumento v. Mezzanotte, supra, 192 Conn. 616. The plaintiffs herein have met this burden.
In this action, the court determines that equity requires that the contract be specifically performed. Accordingly, this court grants specific performance and the defendants are ordered to transfer the subject property to the plaintiffs in accordance with the contract for CT Page 2425 the agreed upon sum within a reasonable time.
Berger, J.