******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LYNNE A. THOMA *v.* OXFORD PERFORMANCE
MATERIALS, INC.
(AC 35313)

Alvord, Mullins and Lavery, Js.

*Argued May 28—officially released September 23, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Peck, J.)

*David R. Makarewicz*, with whom, on the brief, was
*Christopher L. Brigham*, for the appellant (defendant).

*Edward G. McAnaney*, with whom, on the brief, were
*Proloy K. Das* and *Erin E. Canalia*, for the appellee
(plaintiff).

*Opinion*

MULLINS, J. The defendant, Oxford Performance Materials, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, Lynne A. Thoma. On appeal, the defendant claims that the trial court erred in declining to enforce a subsequent employment agreement between the parties. We conclude that the court correctly held that the subsequent agreement the defendant sought to enforce was not supported by consideration, and, consequently, we affirm the judgment of the trial court.

The court found the following relevant facts in its memorandum of decision. The defendant is a corporation that manufactures high performance polymers. The plaintiff was employed by the defendant beginning in February, 2003. In May or June, 2006, the defendant pursued new financing to advance its business. DSM Venturing (DSM), a prospective investor, advised the defendant that it wanted certain employees to enter into employment contracts to ensure continuity within the defendant's company. On the basis of this advice, the plaintiff and the defendant entered into an "Executive Employment Agreement" (first agreement) on June 12, 2006.[1]

The first agreement included the following relevant provisions. The plaintiff was entitled to a $78,000[2] annual base salary and various benefits. The plaintiff's initial employment period was twenty-four months and was automatically renewed for twelve month terms. The court found: "The defendant had the right to terminate the [plaintiff's employment] without cause with sixty days written notice. If terminated without cause, the contract provided that the defendant 'shall pay to the [plaintiff] all compensation accrued and unpaid up to the effective date of termination *plus* the base salary of the [plaintiff] that would be payable to the [plaintiff] for the remainder of the then-current initial or renewal term and six (6) months thereafter . . . .' " (Emphasis in original.) Additionally, the plaintiff agreed not to pursue employment with the defendant's competitors during her employment and for six months after her employment had ended.

After the first agreement was executed, Richard Steele, a managing member of another investor, Longmeadow Capital (Longmeadow), informed Scott DeFelice, the defendant's chief executive officer, that he considered an employment agreement with a monetary component to be "too strong" and that there was no need for it. Following this discussion, the defendant's board of directors decided to draft another agreement that would protect the defendant's intellectual property and include a noncompete clause.

Then, on an unspecified date between June 12 and June 20, 2006, the defendant presented a "Non-competi-

tion, Proprietary Information and Inventions Agreement" (second agreement) to the plaintiff. Section 1.1 of the second agreement provided in relevant part: "Executive[3] accordingly agrees that in the event that the Executive's employment relationship with the [c]ompany terminates for any reason, whether voluntary or involuntary . . . Executive shall *continue to comply with the provisions of* [*s*]*ection 1.2* of this [a]greement." (Emphasis added; footnote added.) Section 1.2 provided: "Executive agrees that [she] shall not, *during the period of* [*her*] *employment* with the [c]ompany, directly or indirectly seek, solicit, enter into or engage in any employment, business, enterprise, agreement or consulting arrangement with any other person or entity, that is at that time engaged in, or that has clear plans for future engagement in competition with the [b]usiness of the [c]ompany . . . ." (Emphasis added.)

The second agreement additionally provided that the defendant could "terminate the [plaintiff's] employment . . . at any time with or without cause and with or without notice," thus making her an at-will employee. The second agreement included no mention of salary or provision for termination compensation. Lastly, the second agreement stated: "This agreement, together with any attachments, contains the entire agreement of the parties, and supersedes any prior or contemporaneous statements or understanding by or between the parties."

The second agreement was executed on June 20, 2006. Pursuant to the first agreement's terms, the plaintiff's salary was increased from $65,000 to $78,000 on or about July 1, 2006.

On November 20, 2007, the defendant terminated the plaintiff from her employment. The plaintiff filed an amended complaint alleging breach of contract and fraud on March 23, 2009.[4] The plaintiff alleged that the defendant breached the first agreement's terms by terminating her employment without notice, cause, or termination pay. The defendant argued at trial that it did not breach the terms of the first agreement because the second agreement had superseded it.

After a trial to the court, the court issued its decision on August 15, 2012. The court held that the first agreement was supported by consideration and was valid. The court additionally held that the second agreement was not valid because it was not supported by consideration.[5] Consequently, the court concluded that the second agreement did not supersede the first agreement and that the plaintiff was entitled to termination compensation in accordance with the first agreement's terms. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant argues that the court erred

by concluding that the first agreement, rather than the second agreement, controlled.[6] According to the defendant's argument, the second agreement was the only enforceable agreement between the parties, as dictated by the complete integration clause stating that the agreement superseded any prior writings. The defendant thus claims that the court erred in concluding that there was no valid consideration to support the second agreement. The defendant argues that (1) the second agreement was supported by consideration because it eliminated the plaintiff's six month noncompete clause that was contained in the first agreement, (2) the plaintiff's increased chance for continued employment was consideration, and (3) the second agreement listed a recital of consideration, which the plaintiff failed to dispute effectively. We will consider each of these arguments in turn.

We begin our analysis by setting forth the relevant legal standards. "Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Viera* v. *Cohen*, 283 Conn. 412, 442, 927 A.2d 843 (2007). "The conclusion drawn from the facts so found, i.e., whether a particular set of facts constitutes consideration in the particular circumstances, is a question of law . . . and, accordingly, is subject to plenary review." (Citation omitted.) *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 71, 38 A.3d 1212 (2012).

"The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 366, 659 A.2d 172 (1995). "Put another way, [u]nder the law of contract, a promise is generally not enforceable unless it is supported by consideration." (Internal quotation marks omitted.) *NSS Restaurant Services, Inc.* v. *West Main Pizza of Plainville, LLC*, 132 Conn. App. 736, 740–41, 35 A.3d 289 (2011). "A modification of an agreement must be supported by valid consideration and requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 332, 71 A.3d 541 (2013).

"[C]onsideration is [t]hat which is bargained-for by the promisor and given in exchange for the promise by the promisee . . . . We also note that [t]he doctrine of consideration does not require or imply an equal exchange between the contracting parties. . . . Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." (Internal quotation marks omitted.) *Martin*

*Printing, Inc.* v. *Sone*, 89 Conn. App. 336, 345, 873 A.2d 232 (2005).

I

The defendant first argues that the second agreement was supported by consideration because it eliminated the six month post-employment prohibition on competition imposed under the first agreement and limited the period of noncompetition to include only the time that the plaintiff was employed by the defendant. We disagree.

"Section 71 of the Restatement (Second) of Contracts relates the familiar legal sense of the term 'consideration': '(1) To constitute consideration, a performance or a return promise must be bargained for. (2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.' " *Mandell* v. *Gavin*, 262 Conn. 659, 668, 816 A.2d 619 (2003). Consideration, therefore, requires intent by the parties to incur benefits or detriments at the time an agreement is entered into. See *Willamette Management Associates, Inc.* v. *Palczynski*, supra, 134 Conn. App. 70, 73 (determining whether contract was supported by consideration "at the time that the parties entered into the . . . agreement").

In addressing the second agreement's noncompetition restriction, the court held that "[t]he language is not clear as to whether the noncompetition [restriction] continues indefinitely or whether it terminates immediately upon the termination of the plaintiff's employment." The court explained: "It appears in section 1.2 of the agreement that the plaintiff is only restricted from competing with the defendant during the term of her employment. Any clarity of intent is muddied by the language in section 1.1 . . . ." The court thus concluded: "Since she played no role in the drafting of the [second] agreement, the court resolves the ambiguity in favor of the plaintiff. By virtue of this agreement, the plaintiff lost her rights to termination pay and gained nothing in return."

The defendant contends that the court erred in treating the terms in §§ 1.1 and 1.2 as "ambiguous" rather than "conflicting." The defendant argues that the court should have reconciled the two provisions and given effect to the limited noncompetition duration found in § 1.2 and not the indeterminate duration in § 1.1. We disagree.

A

The parties dispute the standard of review for the court's finding of ambiguity. The defendant argues that the finding of ambiguity must be reviewed de novo because it was based exclusively upon the second agreement's language. The plaintiff argues that a clearly erroneous standard of review is applicable because the

court found ambiguity only to determine whether the second agreement was supported by consideration, which is a factual determination. We agree with the defendant regarding the standard of review.

De novo review traditionally has been applied to findings of contractual ambiguity when a court undertakes contractual construction. See, e.g., *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 66, 940 A.2d 878 (2008) ("[w]hether contractual language is ambiguous is a question of law and is subject to plenary review"). Additionally, in the context of contract interpretation, "[w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000). In the present case, the court's conclusion that the noncompetition restriction's duration was ambiguous was based solely on the second agreement's language. Consequently, we review de novo the court's holding that the duration of the noncompetition restriction found in §§ 1.1 and 1.2 was ambiguous.

B

We next consider whether the court correctly determined that the noncompetition restriction was ambiguous. "[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670–71, 791 A.2d 546 (2002).

Part 1 of the second agreement was labeled "Noncompetition" and included § 1.1 and § 1.2 (noncompetition restriction). As previously quoted, § 1.2 provided that the plaintiff would not compete with the defendant "during the period of Executive's employment with the Company." If read in isolation, § 1.2 appears to provide that the noncompetition restriction only applied while the plaintiff was employed by the defendant. Nevertheless, § 1.2 must be "read in light of the other provisions" of the second agreement. *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 671.

Section 1.1 provided that the plaintiff agreed not to compete with the defendant "in the event that Executive's employment relationship with the Company terminates for any reason, whether voluntary or

involuntary," and that the plaintiff would "continue to comply with the provisions of Section 1.2" of the second agreement. Section 1.1, therefore, indicated that the plaintiff's noncompetition restriction continued indefinitely. Consequently, the duration of the noncompetition restriction is internally inconsistent and susceptible to more than one interpretation: one where the duration of noncompetition was limited to the timeframe of the plaintiff's employment and another of unlimited duration. See *Charette* v. *Waterbury*, 80 Conn. App. 232, 246–47, 248, 834 A.2d 759 (2003) (affirming trial court's determination that cross-referenced provisions created ambiguity in collective bargaining agreement), cert. denied, 267 Conn. 910, 840 A.2d 1172 (2004).

Irreconcilable inconsistent provisions have been treated by this court and our Supreme Court as creating an ambiguity within the contract. See *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 329, 714 A.2d 1230 (1998); *Dobuzinsky* v. *Middlesex Mutual Assurance Co.*, 49 Conn. App. 398, 406, 714 A.2d 702, cert. denied, 247 Conn. 908, 719 A.2d 902 (1998). For example, in *Imperial Casualty & Indemnity Co.* v. *State*, supra, 329, our Supreme Court analyzed an insurance contract that included "inconsistent policy language" regarding its coverage of injuries arising from intentional acts. In determining that the insurance contract was internally inconsistent regarding its scope of coverage, the court explained: "Although by defining an occurrence as 'an accident' the policy attempts to limit coverage to conduct that is unintentional, this definition, when read in conjunction with the definition of personal injury, gives rise to an internal inconsistency. . . . In light of this inconsistency, it is impossible to determine solely on the basis of the policy's express language whether the conduct at issue in this case is covered." Id., 327.

In resolving the contract's internal inconsistency in favor of the policyholder, our Supreme Court explained: "A . . . reason to interpret the inconsistent policy language as encompassing intentional conduct is the general rule that ambiguous provisions in a contract are to be interpreted against the drafter. . . . Because we have already determined, in this case, that it is the language of the policy itself that gives rise to an ambiguity, application of the rule is appropriate and serves to further support our conclusion that the policy must be interpreted to include coverage for intentional acts that result in personal injuries during the policy period." (Citations omitted.) Id., 329. Our Supreme Court's holding in *Imperial Casualty & Indemnity Co.* demonstrates that irreconcilable inconsistent language, like the noncompetition restriction's durational provisions in present case, creates ambiguity.

Still, the defendant argues that the court should have

treated the provisions as "conflicting" and reconciled the duration of the noncompetition period as set forth in §§ 1.1 and 1.2 instead of analyzing the contract as ambiguous. We conclude that the court properly determined that the language was ambiguous because it could not reasonably be reconciled.

It is true that, "[w]here two clauses which are apparently inconsistent *may be reconciled by a reasonable construction*, that construction must be given, because it cannot be assumed that the parties intended to insert inconsistent and repugnant provisions." (Emphasis added; internal quotation marks omitted.) *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 534, 630 A.2d 115 (1993). Such a reasonable construction is not possible in this case.

Here, § 1.1 provided an indefinite noncompetition duration and specifically cross-referenced § 1.2, which provided a timeframe limited to the plaintiff's employment. As a result, construing the noncompetition restriction's duration as limited to the plaintiff's term of employment would have rendered meaningless the language of § 1.1, which provided that if the plaintiff's "employment relationship . . . terminates for any reason . . . Executive shall continue to comply" with the restrictions in § 1.2. "We are reluctant to conclude that a contractual provision constitutes a meaningless gesture by the parties." (Internal quotation marks omitted.) *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, supra, 32 Conn. App. 534. Therefore, the language in each clause of the noncompetition restriction was not sufficiently clear for the court to reconcile them. See id., 533. Consequently, the court correctly determined that the noncompetition restriction's duration was ambiguous.

C

We now consider whether the court properly resolved this ambiguity. "When . . . a contract provision is ambiguous or contract provisions are internally inconsistent, a question of fact is involved." *Bank of Boston Connecticut* v. *Avon Meadow Associates*, 40 Conn. App. 536, 540, 671 A.2d 1310, cert. denied, 237 Conn. 905, 674 A.2d 1329 (1996). Therefore, we review the court's resolution of the ambiguous noncompetition duration under a clearly erroneous standard. *Murtha* v. *Hartford*, 303 Conn. 1, 8, 35 A.3d 177 (2011).

"In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous." (Internal quotation marks omitted.) *Weyel* v. *Catania*, 52 Conn. App. 292, 295, 728 A.2d 512, cert. denied, 248 Conn. 922, 733 A.2d

846 (1999).

Pursuant to the doctrine of contra proferentem,[7] the court construed the noncompetition restriction's ambiguous duration against the defendant because the plaintiff played no role in drafting the second agreement and, as a result, held that the second agreement was not supported by valid consideration. The court explained that, although "the ambiguity in the contract is construed against the defendant as the drafter, the defendant cannot rely on [this] rule of contract construction to support its argument that there was valid consideration at the time the [second] agreement was signed."

The defendant contends that the court failed to exhaust all other methods of determining the parties' intent before reverting to contra proferentem as a last resort. See *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 107, 84 A.3d 828 (2014) (contra proferentem "applicable only as a last resort" [internal quotation marks omitted]). The defendant specifically argues that the court should have: (1) construed the specific duration set forth in § 1.2 over the general duration set forth in § 1.1 or (2) given effect to the enforceable restrictive covenant set forth in § 1.2 instead of the invalid and unenforceable one set forth in § 1.1. We are not persuaded.

Although the defendant now argues, on appeal, that the court should have exhausted all other methods of interpretation before using contra proferentem to resolve the ambiguous duration, this was not its position at trial. Indeed, the defendant conceded in its post-trial brief that "even if the restrictive covenant in Section 1 of the [second] agreement is ambiguous . . . such an ambiguity would result in that provision of the agreement being construed against the drafter." (Emphasis omitted.) Given the defendant's position at trial, we are unconvinced that there was error in the court applying the very canon of construction that the defendant insisted upon.[8] See *Gorelick* v. *Montanero*, 119 Conn. App. 785, 797 n.15, 990 A.2d 371 (2010) (party cannot challenge on appeal "the trial court's application of legal principles or procedures that they requested be applied at trial" [internal quotation marks omitted]).

The defendant additionally argues that the court erred by failing to consider the parties' past course of dealing when resolving the second agreement's ambiguous noncompetition duration.[9] We disagree.

The first and the second agreement were both entered into evidence as full exhibits at trial. The court heard testimony regarding both agreements' noncompetition clauses, as well as the relationship between the noncompete covenants in the two agreements. The court construed the duration of the second agreement's noncompetition restriction against the defendant only after being presented with that evidence. Although the court

made no specific finding regarding the impact of the parties' past course of dealing, the defendant never requested such a finding through a motion for articulation.[10]

"In Connecticut, our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank,* 143 Conn. App. 671, 681, 72 A.3d 1121 (2013). Consequently, we conclude that the court correctly determined that the second agreement's ambiguous noncompetition restriction did not constitute valid consideration.[11]

## II

The defendant next contends that the court improperly concluded that the plaintiff's improved chances of continued employment did not constitute consideration. We disagree.

The court found, and the defendant does not dispute, that the first agreement provided that the plaintiff had the right to compensation if her employment was terminated without cause and that the second agreement provided that the plaintiff was an at-will employee. The court determined that the plaintiff's continued employment did not constitute consideration, and explained: "The [second] agreement clearly interferes with the plaintiff's rights as promised in the [first] agreement in that it eliminates the plaintiff's contractual right to collect termination compensation. . . . [T]here must be valid and adequate consideration for the less advantageous terms of employment contained in the [second] agreement, other than continued employment of the plaintiff."

The defendant purports that it would have been forced to liquidate and the plaintiff would have lost her job if it had failed to obtain financing. The defendant contends that the financing it ultimately secured was predicated on the second agreement's execution. The trial court found, however, that "the more persuasive evidence does not support this contention."

The court explained, and the record confirms, that the only document outlining DSM's financing terms contained no requirement that the defendant execute the second agreement. Steele testified that Longmeadow's investment would not have necessarily been held up if the second agreement was never executed. Additionally, Kevin Cronin, the defendant's former general manager and vice president, testified that he was not aware of any condition for financing that required the second agreement's execution. On the contrary, he did not believe that the second agreement conformed to the investors' prerequisite for financing, which was conti-

nuity of employment for key employees. Consequently, the record supports the court's conclusion that the defendant's financing and the plaintiff's continued employment were not predicated on the second agreement's execution.[12] As a result, the court reasonably concluded that the plaintiff's continued employment, for which the first agreement already provided, did not constitute valid consideration to support the second agreement. See *Brian Construction & Development Co.* v. *Brighenti*, 176 Conn. 162, 166, 405 A.2d 72 (1978) ("when a party agrees to perform an obligation for another to whom that obligation is already owed, although for lesser remuneration, the second agreement does not constitute a valid, binding contract").

### III

The defendant finally argues that the plaintiff failed to meet her burden of disputing the second agreement's listed recitals of consideration.[13] We disagree.

The defendant's contention is that, because the second agreement contained a recital of consideration, the burden shifted to the plaintiff to prove a lack of consideration and the plaintiff did not meet that burden. "A recitation of consideration received does not prevent proof that there was no such consideration. . . . It is simply prima facie evidence, shifting the burden of proof to the party disputing the consideration." (Citations omitted.) *TIE Communications, Inc.* v. *Kopp*, 218 Conn. 281, 292, 589 A.2d 329 (1991).

Although the court made no specific finding regarding the second agreement's purported recital of consideration, the record demonstrates that the court considered the recitation and determined that the second agreement lacked valid consideration. The second agreement's "recitals" largely included provisions asserting that the agreement was a prerequisite for the defendant receiving financing and that, as an employee, the plaintiff would benefit from that investment.[14] As previously discussed, the court's finding, which was supported by the record, was that the defendant's financing and the plaintiff's continued employment were not predicated on the second agreement's execution. Moreover, the plaintiff testified that she received nothing in exchange for entering into the second agreement, despite giving up the rights to which she was entitled under the first agreement. Consequently, the plaintiff met whatever burden she might have had disputing the purported consideration recited in the second agreement.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] According to § 6.6 of the first agreement, the effective date of the agreement was July 1, 2006.

[2] The plaintiff's annual salary was $65,000 at the time the first agreement was executed.

[3] The plaintiff is referred to as "the Executive" in the second agreement.

[4] The court dismissed the fraud count at a hearing held on April 30, 2012. That decision has not been appealed.

[5] On August 13, 2013, the court filed an articulation specifying that it "found that there was no valid consideration for the [second] agreement."

[6] Neither party has disputed that the first agreement was a valid contract.

[7] Under the doctrine of contra proferentem, "ambiguities in a contract are construed against the party who drafted the contract." *David M. Somers & Associates, P.C.* v. *Busch*, 283 Conn. 396, 405 n.10, 927 A.2d 832 (2007); see also *Cruz* v. *Visual Perceptions, LLC*, 311 Conn. 93, 107, 84 A.3d 828 (2014).

[8] We, likewise, disagree with the defendant to the extent it suggests that, had the court properly applied contra proferentem, it would have imposed the shorter noncompetition restriction set forth in § 1.2 because that would be most favorable to the plaintiff in an employment contract context. As the court astutely observed, that principle of contract construction is inapplicable when determining whether an ambiguous provision constitutes consideration. Any benefit that the plaintiff hypothetically would have received from a court construing the noncompetition restriction's ambiguous durational term merely would be incidental, and not bargained for, when the contract was entered into. See *Willamette Management Associates, Inc.* v. *Palczynski*, supra, 134 Conn. App. 73–74.

[9] "Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and *the course of dealing between the parties. . . .* But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention." (Emphasis added; internal quotation marks omitted.) *Levine* v. *Massey*, 232 Conn. 272, 288, 654 A.2d 737 (1995) (*Berdon, J.*, dissenting), quoting 2 Restatement (Second), Contracts § 212, comment (b) (1981).

[10] The defendant did file a motion for articulation, but that motion did not seek an articulation of the court's findings regarding the parties' past dealings.

[11] The defendant erroneously relies on *Cruz* v. *Visual Perceptions, LLC*, supra, 311 Conn. 93, to support its position that the court prematurely construed the ambiguous duration in the plaintiff's favor. See id., 108. *Cruz* addressed contract construction, which requires a different analysis than the one used for determining whether a contract was supported by consideration. See id., 101. Additionally, to the extent that *Cruz* is applicable, the record indicates that the court construed the ambiguous duration in favor of the plaintiff only after considering extrinsic evidence regarding the parties' intent.

[12] We need not address the defendant's contention that improved prospects for the plaintiff's stock options constituted consideration because the court excluded evidence concerning stock options as irrelevant and the defendant has not challenged that determination on appeal.

We also are unconvinced by the defendant's contention that the court should have found that the plaintiff's July 1, 2006 salary increase was consideration to support the second agreement. The record supports the court's finding that the salary increase was not consideration for the second agreement: the defendant was obligated to increase the plaintiff's salary under the first agreement while the second agreement was silent regarding salary. See *TD Bank, N.A.* v. *M.J. Holdings, LLC*, supra, 143 Conn. App. 332 ("[a] modification of an agreement . . . requires a party to do, or promise to do, something further than, or different from, that which he is already bound to do" [internal quotation marks omitted]).

[13] The second agreement's recitation stated: "WHEREAS, as of the date hereof, the Executive is an at-will employee of the Company;

"WHEREAS, the Company and certain other investors (the 'Series B Purchasers') have executed and delivered a Series B Convertible Redeemable Preferred Stock Purchase Agreement dated as of the date hereof (the 'Purchase Agreement') pursuant to which the Series B Purchasers have purchased shares of the Company's Series B Preferred Stock from the Company;

"WHEREAS, as a condition to such purchase of Series B Preferred Stock by the Series B Purchasers pursuant to the Purchase Agreement, the undersigned is required to enter into this Agreement; and

"WHEREAS, as an employee of the Company, the Executive shall benefit from the investment made by the Series B Purchasers in the Company pursuant to the Purchase Agreement;

"NOW, THEREFORE, in consideration of the foregoing, the mutual cove-

nants and agreements set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows. . . .”

[14] The only remaining “consideration” specified in the recitals was that the defendant was “an at-will employee,” which is not valid consideration. We additionally reject the defendant’s argument that this provision of the second agreement’s recitation clarified the duration of the noncompetition restriction.

[15] We are unconvinced by the defendant’s contention, which has been raised for the first time on appeal, that relieving the plaintiff of certain obligations that she had under the first agreement was valid consideration to support the second agreement. We consider the defendant’s shift in arguments to be troubling because “to review . . . claim[s] . . . articulated for the first time on appeal and not [raised] before the trial court, would [be nothing more than] a trial by ambuscade of the trial judge.” (Internal quotation marks omitted.) *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 216 n.18, 905 A.2d 1135 (2006). Additionally, although the trial court made no specific finding regarding the obligations of which the plaintiff purportedly was relieved by virtue of the second agreement, the record does not indicate that the court failed to consider those provisions in concluding that there was no valid consideration. Both agreements were entered into evidence as full exhibits, and we presume that the court “undertook the proper analysis of the law and the facts”; (internal quotation marks omitted) *Brett Stone Painting & Maintenance*, *LLC* v. *New England Bank*, supra, 143 Conn. App. 681; in determining that the second agreement, which included those provisions, was not supported by consideration.